164 So. 247

**OZENNE et al. v. BOARD OF COM'RS OF ST. LANDRY AND ST. MARTIN GRAVITY DRAINAGE DIST. NO. I OF PARISHES OF ST. LANDRY AND ST. MARTIN.**

No. 33643.

Nov. 4, 1935.

W. C. Perrault, of Opelousas, for appellants.

L. O. Pecot, of Franklin, Labbe & Guidry, of St. Martinsville, and R. Lee Garland, of Opelousas, for appellee.

Lewis R. Graham, of New Orleans, amicus curiæ.

ODOM, Justice.

The present bonded indebtedness of the St. Landry and St. Martin gravity drainage district No. 1 of the parishes of St. Landry and St. Martin, consists of:

(a) $171,000 of bonds secured by an ad valorem tax, dated May 1, 1926, bearing interest at 6 per cent. maturing over a period of years ending in 1958.

(b) $189,000 of bonds secured by an acreage tax, dated May 21, 1926, bearing interest at 5 per cent. and maturing over a period of years ending in 1959.

(c) $72,500 of bonds secured by an acreage tax, dated August 1, 1929, bearing interest at 5 per cent. and maturing over a period of years ending in 1949. These bonds were issued under and according to the provisions of section 14, art. 14, of the Constitution of 1921.

On May 20, 1935, the board of commissioners of the drainage district adopted a resolution, which was duly published, setting forth its intention to issue refunding bonds in replacement and substitution of the original bonds as follows:

(d) $112,700 of refunding ad valorem tax bonds bearing interest at 4 per cent. per annum and maturing over a period of years ending in the year 1967.

(e) $125,000 of refunding acreage tax bonds bearing interest at 4 per cent. per annum maturing over a period of years ending in 1967.

(f) $48,300 of refunding acreage tax bonds bearing interest at 4 per cent. per annum maturing over a period of years ending in 1967.

The drainage board declared in its resolution that it proposed to issue these refunding and replacement bonds on the sole authority of Act No. 85 of 1934, which act was submitted to the electors of the state and by them adopted as an amendment to section 14(g), art. 14, of the Constitution of 1921.

It will be noted that the total amount of the proposed refunding and replacement bonds is considerably less than the total amount of the original issue. That is because the board contemplated, and so stated in its resolution, that the refunding bonds might be exchanged for a greater amount in principal of the old bonds of the same character.

Plaintiffs, who are taxpaying residents of the drainage district and who admittedly have an interest in bringing this suit, brought injunction proceedings against the board to restrain it from issuing, selling or delivering the proposed refunding and replacement bonds, their alleged cause of action being, in the main, that the board had no authority to proceed as proposed, and that the refunding bonds which it proposed to issue would be null and void for twelve separate and distinct alleged reasons.

The drainage board, in its answer, denied categorically all of plaintiff's allega-

tions assailing the legality of its procedure and of the proposed refunding bonds.

The judgment below was against plaintiffs, and they appealed.

■ (1) As already stated, the drainage board proposed to issue these refunding bonds on the sole authority of section 14(g), art. 14, of the Constitution of 1921, as amended, see Act No. 85 of 1934. Plaintiffs' first ground of attack is:

"That said constitutional amendment is not self-operative and has not been put into effect by any act of the Legislature of Louisiana, and that there is no authority for the issuance of such refunding bonds in the absence of a duly enacted statute of the state authorizing their issuance."

This objection is answered in precise terms by the act itself, which is now a part of the Constitution. It says:

"No proceeding in respect to the issuance of any such refunding bonds shall be necessary, except such as are contemplated by this paragraph (section), which shall be self-operative, and no further legislation shall be required to effect the same."

■ (2) The second objection is:

"That the issuance of said refunding bonds will violate section 14(a) of article 14 of the Constitution because the defendant Board proposes by said resolutions to issue said refunding bonds without having secured authority for their issuance from the resident tax payers qualified to vote and voting at an election called

for the purpose as provided in section 14(a) article 14 of the Constitution."

Section 14(a) art. 14, of the Constitution of 1921, as amended, see Act No. 51 and Act No. 261 of 1926, has reference only to the issuance of original bonds and provides that the subdivisions of the state named therein may issue bonds when authorized by a vote of a majority in number and amount of the property taxpayers.

Section 14(g) of the same article, as amended, see Act No. 85 of 1934, has reference exclusively to the "re-adjusting, refunding, extending or unifying the whole or any part" of the outstanding bonds or certificates of indebtedness of the various political subdivisions of the state mentioned in section 14(a), drainage districts being among them. Section 14(g), as amended, says that such political subdivisions "shall have full power and authority to issue negotiable interest bearing refunding bonds in an amount not exceeding the amount of bonds and certificates of indebtedness to be refunded, and the interest due thereon." But it says nothing about referring the matter of refunding the bonds and certificates back to the taxpayers for authority. On the contrary, section 14(g), as amended, specifically provides:

"The governing body of any such subdivision and the Parish School Boards shall have full power and authority to adopt all ordinances or resolutions necessary to carry the provisions of this paragraph into effect. No proceedings in respect to the issuance of any such refunding bonds

shall be necessary, except such as are contemplated by this paragraph."

The only "proceedings" mentioned in this paragraph are the "ordinances or resolutions" necessary to carry its provisions into effect. Clearly it was not necessary for the board to submit the matter of refunding the bonds back to the tax payers.

■ (3) The third objection is: ·

"That the issuance of said refunding bonds (ad valorem) will cause the bonded indebtedness of the Drainage District to exceed the limitations provided by section 14(f) of Article 14 of the Constitution."

This objection finds its answer in section 14(g), as amended, see Act No. 85 of 1934, which says:

"The limitations as to indebtedness and bonds issued based on the assessed valuation contained in Section 14(f) of this Article shall not apply to refunding bonds issued hereunder."

Article 14(f) of the Constitution, as amended, see Act No. 207 of 1932, provides that the bonded indebtedness of these political subdivisions shall not exceed, in the aggregate, 10 per centum of the assessed valuation of the taxable property of such subdivision, and counsel say that due to shrinkage in values of real property in the district since the original bonds were issued, the total amount of the ad valorem refunding bonds which the board proposes to issue will exceed 10 per centum of the present assessed valuation of all real property in the district, and that there is a conflict between sec-

tion 14(f) and section 14(g), as amended. Assuming that counsel is correct. in his statement that the total amount of these ad valorem refunding bonds is in excess of the limitation set by section 14(f) and that there is an apparent conflict between those two sections of article 14, that does not affect the legality of the proceedings taken by the board, nor will it affect the validity of the refunding bonds which it proposes to issue, because section 14(g), as amended, supersedes section 14(f) in this respect. Act No. 85 of 1934, which is now a part of the Constitution as section 14(g) of article 14, having been enacted and adopted as part of the Constitution subsequent to the final amendment of section 14(f), necessarily takes precedence over it in so far as there may be an apparent conflict.

■ (4) The fourth objection is:

"That the issuance of said acreage refunding bonds will violate the provisions of section 14(f) of article 14 of the Constitution with respect to the imposition and collection of acreage taxes or forced contributions for a period of not more than forty (40) years because the maturities of the refunding acreage bonds will extend over a period of more than forty (40)˙ years from May 1, 1926, the date of one of the issues of the original acreage bonds and will violate section 14(f) of the Constitution for the reason that the maturities of the refunding bonds which the defendant Board. contemplates issuing in replacement of the original issue of acreage bonds dated August 1, 1929, extend over a longer period of time than said

original bonds do, and that in no event may refunding bonds mature over a period of time extending beyond the date of the last maturing bond of the series of original bonds sought to be refunded by said refunding bonds; and hence no tax or forced contribution can be imposed beyond said date."

Act No. 85 of 1934, which is now section 14(g) of article 14 of the Constitution, is the latest amendment of that article. It relates exclusively to the refunding and readjusting of outstanding bonds and certificates due by certain political subdivisions of the state, and, it being the latest amendment, it follows that such limitations as to amount and the period of time over which original bonds and certificates might extend, and the period of time over which these political subdivisions might levy and collect ad valorem and acreage taxes to pay them, must yield to its specific provisions.

The latest maturing bonds issued by the board on May 1, 1926, secured by an acreage tax, fall due in 1959, and those dated August 1, 1929, secured by a like tax, fall due in 1949, and all the refunding bonds which will bear date May 20, 1935, to be secured by an acreage tax, extend over a period of years ending in 1967, a date far beyond that set for the maturity of similar bonds originally issued, and more than forty years beyond the date of their issuance. Section 14(f) of article 14 of the Constitution does not in terms limit the period of time over which acreage bonds may extend. But the period is limited by implication to forty years because

it is specifically provided that the acreage tax shall not exceed 50 cents per acre per year "for a period not exceeding forty (40) years," and the bonds, of course, could not extend over a period beyond which the board was authorized to levy the tax to pay them. So that it is true as counsel argues that under section 14(f) of article 14, as amended, see Act No. 207 of 1932, acreage bonds could not extend over a period exceeding forty years, and the board cannot levy an acreage tax for a longer period than that.

But when we come to section 14(g), the latest amendment, we find that it provides that for the purpose of "re-adjusting, refunding, extending or unifying the whole or any part of its outstanding bonds and certificates," any of such political subdivisions "shall have full power and authority to issue negotiable interest bearing refunding bonds in an amount not exceeding the amount of bonds and certificates of indebtedness to be refunded, and the interest due thereon."

We emphasize the word "extending" because the use of that word indicates that it was intended that the board might, in refunding the original bond issue, extend the maturities of the refunding bonds beyond that set for the maturity of the original bonds. The word "extending" cannot refer to the amount of the refunded bonded indebtedness because that is limited by the terms of the act to an "amount not exceeding the amount of bonds and certificates of indebtedness to be refunded, and the interest due thereon."

But section 14(g) goes further and says that upon the issuance of refunding bonds any holder of any outstanding bond or certificate of indebtedness of any such political subdivision, whether matured or unmatured, may, upon surrendering such bond or certificate to the issuing authority, "receive in exchange and substitution therefor a refunding bond of the same amount * * * *maturing not longer than forty (40) years from date of such refunding bond."* (All italics here and elsewhere in this opinion are ours.)

It is perfectly clear therefore that under this section, as amended, the board is authorized to extend the maturity of the refunding bonds over a period not exceeding forty years, not from the date of the original bonds, but from the "date of such refunding bonds."

The time limit for the assessing and collecting of the acreage tax is likewise extended by section 14(g) to a period coextensive with the maturity of the refunding bonds, it being provided that the board shall secure the payment of the refunding bonds "by imposing and collecting annually an acreage tax or forced contribution * * * sufficient in amount to pay interest and principal falling due each year, when the bonds to be refunded were secured in like manner."

This objection, like the others discussed, is without merit.

■ (5) The fifth objection is:

"That the issuance of said refunding bonds (acreage) will violate the provisions of section 14(h) of Article 14 of the Constitution because said refunding bonds (acreage) mature over a period of years ending in 1967, which is more than forty (40) years from May 1, 1926, the date of one of the issues of original acreage bonds sought to be refunded by a portion of said refunding bonds, because Act No. 85 of 1934 amending section 14(g) of article 14 of the Constitution specifically provides that the refunding bonds issued under said section 14(g) shall be governed by the provisions of section 14(h) of article 14 of the Constitution, which provides that no bonds issued by a drainage district or other political subdivision of the State shall run for a period of more than forty (40) years."

Section 14(h) provides, in so far as the period of time over which bonds issued by these political subdivisions are to run, that:

"No bonds issued by any subdivision hereunder shall run for a longer period than forty (40) years from the date thereof."

That there is nothing in this provision inconsistent with the provisions of section 14(g) as to the maturities of the refunding bonds is perfectly apparent. What each of the sections means is just what it says. Section 14(h) limits the maturity date of all bond issues, whether original or refunding, to *forty years* "from the date thereof." Section 14(g) limits the maturity date of refunding bonds to "forty (40) years from date of such refunding bond." The period in each section is the same, *forty years from the date of the bonds.*

**(6) The sixth objection is:**

"That the Legislature has passed no law putting into effect the permissive provisions of section 14(j) of Article 14 of the Constitution, which provides that the Legislature 'may' authorize the taxing officers of the State to impose and collect taxes required for the payment of the principal and interest of any bonded debt of a drainage district or other political subdivision of the State, and hence there is no authority for the imposition and collection of the taxes required for the payment of the principal and interest of. said refunding bonds."

The answer to this objection is the same as that to the first one, which has been disposed of..

Section 14(g) of the Constitution, as amended, see Act No. 85 of 1934, is by its very terms self-operative. It needs no enabling act. It not only authorizes but requires the governing authorities to secure the refunding bonds "by imposing and collecting annually" an acreage tax and forced contributions sufficient in amount to pay the refunding bonds in principal and interest. The duty to secure these bonds by the imposition and collection of such taxes and forced contributions is mandatory.

Section 14(j) of article 14, as amended, see Act No. 261 of 1926, provides that the Legislature may authorize the taxing officers of the state, meaning the taxing officers other than the governing authorities of these political subdivisions, to impose and collect taxes required for the payment of the principal and interest of the bonded debt of any parish, municipal corporation, road, subroad, drainage, subdrainage, irrigation, or school district, "in the event of any default in the imposition or collection thereof," that is, a default on the part of the governing authorities to impose and collect such taxes. Even though the Legislature has failed up to date to enact such legislation as that contemplated by section 14(j) of the Constitution, that does not affect the validity of the proposed refunding bonds, nor leave the holders of them without remedy in case the governing authorities should fail or refuse to impose and collect the taxes. Section 14(i) of the article 14 reads as follows:

"Should any subdivision neglect or fail for any reason to impose or collect sufficient taxes for the payment of the principal and interest of any bonded debt hereafter to be incurred under this Constitution, any person in interest shall have a cause of action enforceable in any court having jurisdiction of the subject matter to enforce the imposition and. collection of such taxes."

This section as quoted is part of the original Constitution of 1921.

**(7) The seventh objection is:**

"That the resolutions authorizing the issuance of said refunding bonds provide that any or all of such bonds may be exchanged for a like or greater principal amount of the original bonds, and that these resolutions violate said Constitutional Amendment (Act No. 85 of 1934),

which provides that any holder of any outstanding bond sought to be refunded may, upon surrender of such bond, receive in exchange and substitution therefor a refunding bond of the same amount."

There is nothing objectionable about this provision of the resolution adopted by the board, nor is it inconsistent or contrary to the provisions of the Constitution. The resolution permits the board to exchange any or all the refunding bonds for a like amount, meaning the same amount, of the original bonds, or a greater amount of them in principal if it can. Under the Constitution the holders of the original bonds are entitled to receive, and may demand, upon surrender of them, new or refunding bonds of the same amount in principal, or they need not surrender them at all if they prefer to keep them. But if they are willing to surrender them in exchange for the new or refunding bonds and willing to accept for them refunding bonds less in principal amount than the amount of the bonds which they hold, the board is not prohibited by the Constitution from taking advantage of an opportunity of exchanging its refunding bonds for a greater amount in principal of its old bonds. It would be to the advantage of the taxpayers for the board to do so, and, if it did, the taxpayers would have no right to complain.

■ (8) The eighth objection is:

"That said resolutions authorizing the issuance of said refunding bonds provide that the legality of such refunding bonds and of the taxes necessary to pay the same shall be conclusively presumed if the va-

lidity of the same is not challenged by suit filed within thirty (30) days from 'the date of publication of the issuing of said bonds', which language parallels the provisions of section 14(g) of article 14 of the Constitution, as amended by Act No. 85 of 1934, but which language is ambiguous and uncertain, and that the rights of the plaintiffs, as owners of real property and as duly qualified taxpaying voters in said Drainage District, will be jeopardized by such ambiguous and uncertain provisions unless the courts of this State should determine definitely the date on which the prescription of thirty (30) days begins to run so as to determine after what date no suit may be entertained by the courts challenging the validity of such refunding bonds and of the taxes required to pay the same."

There is no fatal ambiguity or uncertainty about this provision of the Constitution. Its meaning is clear enough, and is that, if the validity of the refunding bonds is not raised, that is, questioned by a judicial proceeding, within thirty days from date of the publication of the resolution providing for the issuance of the refunding bonds, "the authority to issue the said bonds, the legality thereof and of the taxes necessary to pay the same shall be conclusively presumed and no court shall have authority to enquire into such matters." In other words, the date on which the prescription of thirty days begins to run is the day on which the resolution is published.

■ (9) The ninth objection raised by the taxpayers is that the resolution au-

thorizing the issuance of the refunding bonds provides that all interest coupons attached to both the ad valorem and the acreage bonds, if not paid at maturity, shall thereafter bear interest at the same rate as the bonds themselves, and that the board shall levy taxes sufficient in amount to pay interest on the coupons.

The board has no authority to obligate itself to pay interest on the coupons, as they themselves represent the interest due on the bonds. That would be paying interest on interest, or compound interest, which is prohibited by the Civil Code, art. 1939, which reads:

"Interest upon interest can not be recovered unless it be added to the principal, and by another contract made a new debt. No stipulation to that effect in the original contract is valid. The provisions of this article shall be held to apply to all persons, partnerships and corporations irrespective of custom or of the character of business in which they are engaged."

Furthermore the Constitution permits the board to levy only such taxes as are "sufficient in amount to pay interest and principal falling due each year."

However, this objectionable feature of the resolution will not affect the validity of the proceedings or of the refunding bonds which the board proposes to issue, because neither the bonds themselves nor the coupons provide for the payment of interest on the coupons. The bonds and the coupons, and not the resolution, evidence the obligation between the parties. Attached to the resolution adopted by the board are skeleton forms of the bonds and coupons, and we note that the ad valorem bonds contain this clause:

"There shall be annually levied, assessed and collected in each year while this bond is outstanding and unpaid an ad valorem tax on all the taxable property within said Gravity Drainage District sufficient to pay the *interest on this bond and the principal hereof at maturity.*"

The acreage bonds contain this clause:

"This bond is payable from and secured, *as to principal and interest,* by an annual forced contribution or acreage tax. * * *"

And the resolution adopted by the board says that "there shall be levied, assessed and collected during each of the years 1935 to 1966 inclusive a forced contribution or acreage tax * * * which tax *shall secure the payment of the principal and interest* of said refunding bonds."

Therefore, even though the board did put into its resolution a clause providing for the payment of interest on the coupons, which it is prohibited from doing, that does not affect the validity of the entire proceeding or of the bonds.

(10) The tenth objection is that the board exceeded its authority by incorporating into its resolution a provision to the effect that it should have power to enter into an agreement with the Reconstruction Finance Corporation, other governmental agency, or with any person, firm, or corporation purchasing the refunding bonds, with respect to reserve funds to be raised from taxes and forced

contributions to be levied on the taxable property of the district, and the reassessment of benefits or adjustment of charges affecting the lands within the district and the exclusion of unproductive or other lands from said district.

There is nothing in the Constitution which authorizes drainage boards to create reserved funds from taxes and forced contributions levied against the property within the district or the adjustment of charges affecting the lands or the exclusion of unproductive or other lands from the district. The bonds and the interest are secured by a tax, either ad valorem or acreage, on all the lands in the district, and the board may levy, assess, and collect only such taxes or forced contributions as are sufficient to pay the bonds and the interest thereon.

But this particular part of the resolution, even though unauthorized, does not affect the validity of the other provisions of the resolution or the proceedings which are in strict conformity with the Constitution, nor will it affect the validity of the bonds to be issued.

■ (11) The further objection is made that whereas the bonds, on their face, purport to be valid, legal, and enforceable obligations of the drainage district, yet that is not true because they will be subject to the provision of Act No. 2 of the Second Extra Session of the Legislature of 1934, known as the "Debt Moratorium Act," and will not be collectable and enforceable according to their terms and tenor. The interest which the tax-

payers claim to have in raising this point is that the board should not be permitted to incur the expense, all of which must be borne by them, of attempting to float bonds which will not be marketable because of the Moratorium Act.

The act above referred to is entitled, "An Act Providing for the suspension of all laws or parts of laws relative to the enforcement of *debts* (as herein defined), public and private, except as herein provided," etc.

Section 1 of the act says that its provision shall not apply to any lien, debt, tax, toll, or impost due and owing to the United States, or to any lien, debt, tax, toll, or impost held as security or pledge to secure the payment of any lien, etc., due the United States or any of its departments or bureaus, and reads further:

"Nor shall this act apply to any tax, or lien therefor, due the State of Louisiana *or any of its political subdivisions, agencies, boards, commissions, or departments or to any parish or municipality.*"

Clearly the taxpayers could not invoke the provisions of this act to suspend payment of the taxes levied and assessed to pay the bonds and interest during the financial emergency which the Legislature declared existed. Nor could the board or the taxpayers invoke the provisions of the act against the bondholders because the term "debt," as used in the act, does not apply to the bonds of the state or any of its political subdivisions. The term "debt" is defined in section 14 of the act, which reads as follows:

"The term 'debt' as herein used shall be construed to include any evidence of indebtedness whatsoever, and any and all liens, privileges, or mortgages which might secure the payment of the same, including the vendor's lien, and conventional mortgages, judgments and legal or judicial mortgages, except bonds of the State or of any political subdivision or municipality."

There is therefore no merit in this objection.

■ (12) Section 5, Act No. 6, Second Extra Session of 1935, which was adopted on April 20, 1935, and went into effect prior to the date on which the board adopted its resolution, provides that before incurring any debt, ordering any election, submitting any proposition to incur any debt, or to levy any special tax, borrowing any money for any purpose whatever, "issuing any bonds or other evidence whatever of debt, levying any tax or pledging any tax or revenue or income for the payment of any such bonds or debt, * * * every such governmental agency of the State of Louisiana named in Section 2 of this Act shall obtain the consent and approval of the State Bond and Tax Board."

The drainage board did not comply with this provision of the act before adopting the resolution, and it is argued that the entire proceeding is invalid because of that neglect.

We do not think so. The board by its resolution did not even propose to incur any debt. It merely gave notice that it intended to refund and readjust an old bonded indebtedness created in the years 1926 and 1929. It did not order an election submitting a proposition to incur any debt and levy a special tax, nor did it propose to do so. It did not issue any bonds or other evidences of debt, but only gave notice of its intention to do so. It did not levy any taxes, but in the resolution relating to ad valorem taxes said that "there shall be levied during each of the years 1935 to 1966 inclusive an ad valorem tax * * * sufficient to pay the principal of and interest on said refunding bonds," etc. As to the acreage bonds, the resolution declares that "there shall be levied, assessed and collected during each of the years 1935 to 1966 inclusive a forced contribution or acreage tax" to pay said bonds and interest. This means that if the proposed refunding bonds are issued as contemplated, then these taxes will be levied, assessed, and collected.

The notice published by the board says:

"Notice is hereby given that the Board of Commissioners * * * intends to issue refunding bonds of said Gravity Drainage District," etc.

Very clearly, the drainage board must, before issuing the proposed bonds, if it ever does, obtain the approval of the state bond and tax board, as required by the act above referred to, as well as approval of the proposal to levy the taxes to pay them. But it was not necessary for it to obtain approval of the proposal made in the resolution.

Having considered every · objection raised by plaintiffs to the proceedings attacked and finding no merit in any of them, except as hereinabove stated, we

think the judgment of the trial court refusing to grant the relief prayed for and ordering the suit of the taxpayers dismissed is correct.

Judgment affirmed.