ROGERS, J.
 

 Gravity drainage district No. 2 of the parish of Tangipahoa was created by the police jury in the month of December, 1926. Some time thereafter an election was held in which the qualified voters of the district authorized the board of commissioners to incur debt and to issue bonds in the amount of $240,000 for drainage purposes. These bonds are to run for a period not exceeding 30 years, and are to be paid, principal and interest, out of the proceeds of an ad valorem tax levied on all the taxable property within the district.
 

 Plaintiff is the owner of approximately 500 acres of land lying within the newly created district. He brought this suit against its board of commissioners to obtain the release of his property and to enjoin the levying and collecting of any tax thereon. Plaintiff alleges, as grounds for the relief sought, that his land is high and rolling and needs no drainage whatever; that it cannot benefit, either directly or indirectly, from the proposed drainage; that his property was included within the drainage district for revenue purposes 'only; and that the defendant board of commissioners is attempting to deprive him of his property without due process of law, in violation of the Fourteenth Amendment to the Federal Constitution. The judgment of the court below was in favor of defendant, rejecting plaintiff’s demand, and plaintiff has appealed.
 

 No question is made by plaintiff of the right of the legislature to delegate its authority to the police jury to create the drainage district under review and to define its boundaries. His complaint is that the action of the police jury in including his land within the confines of the district is. purely arbitrary and a. plain abuse of its powers, in violation of the constitutional provision which he invokes. The. answer to plaintiff’s complaint depends upon the evidence adduced by the parties litigant on the trial of the case. In other words, the question presented for determination is essentially one of fact. If the facts show that the police jury formed the
 
 *972
 
 drainage district with respect to plaintiff’s property in an arbitrary manner and confiscatory way, plaintiff is entitled to the relief sought. Myles Salt Co. v. Board of Commissioners, 239 U. S. 478, 36 S. Ct. 204, 60 L. Ed. 392. If, on the contrary, the evidence shows that, in including plaintiff’s property within the drainage district, the police jury exercised a sound and legal discretion, the relief sought by plaintiff must be denied. Houck v. Little River Drainage District, 239 U. S. 254, 36 S. Ct. 58, 60 L. Ed. 266; Miller & Lux v. Sacramento & San Joaquin Drainage Dist., 256 U. S. 129, 41 S. Ct. 404, 65 L. Ed. 859.
 

 We have reached the conclusion from our examination of the evidence, oral and documentary, contained in the record, that the action of the police jury in delimiting the drainage district under review was in no wise arbitrary, unwarranted, or a flagrant abuse of its lawful powers. The salient facts as we have found them are as follows, viz.:
 

 The drainage district embraces approximately 16,000 acres of land. Its northern boundary line is the southern boundary line of gravity district No. 1. On the south it is bounded by a tidewater marsh which borders on Lakes Pontchartrain and Maurepas. The eastern boundary line lies about 4% miles east of the main line of the Illinois Central Railroad Company, which practically bisects the district. Its western boundary is an irregular line which lies approximately 4 miles west of the railroad company’s track. The town of Ponchatoula is located almost in the geographical center of the district. Plaintiff’s tract of land is situated in the western part of the district, a short distance from its western boundary line. The tract itself lies between Ponchatoula creek on the east and Yellow Water creek on the west, and is a short distance north of the confluence of those streams.
 

 The territory embraced within the district is devoted almost exclusively to agriculture and farming. It drains entirely by gravity, mainly through Ponchatoula and Yellow Water creeks. The district lies in the southernmost part of the parish, and from Rose-land, a town situated about 28 miles north of the tidewater marsh, the drainage over a large area is southward towards the marsh over and through the lands within the district. Seventy-five per cent, of this drainage is through Ponchatoula and Yellow Water creeks, which have been apparently created by nature for the purpose of carrying off the greater portion of the water that flows through the district. Their improvement must necessarily form part of any drainage system established for the benefit of that section of the parish. The engineer who designed the district recognized this fact, and he fixed its limits entirely with reference thereto and not with a view of including plaintiff’s property therein for revenue purposes only.
 

 The western boundary of the district follows as near as possible the watershed line of Yellow Water creek and the eastern boundary is practically the watershed line of Big Branch, one of the natural drains of the territory.
 

 There is little, if ,any, dispute that at least 75 acres of plaintiff’s land lying along Ponchatoula and Yellow Water creeks will be made cultivable by being relieved of overflow through the newly created drainage system. Moreover, plaintiff’s entire tract of land descends gradually from its highest point to the lowlands by rolling levels, and its drainage, which is entirely into Ponchatoula and Yellow Water creeks, must necessarily be improved to some extent by the deepening and cleaning out of those two water courses. A direct benefit to his land will also result from the prevention by adequate drainage of the
 
 *974
 
 submersion’and erosion of tbe main and lateral public roads, and tbe destruction of bridges, thus permitting ingress and egress from his property in all seasons. Tbe indirect benefits inuring to plaintiff’s property are numerous; some of them being tbe increased value of all lands in tbe district, elimination of stagnant fresh-water pools, thereby improving tbe pubr lie health, insurance of emergent medical and surgical attention at all times, uninterrupted mail service, and, generally, the varied and interdependent advantages accruing to a progressive community.
 

 We see no good reason, either in law or equity, why plaintiff should not pay his just proportion of all taxes levied to provide a public improvement which appears certain to inure both directly and indirectly to bis benefit and advantage.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 O’NIELL, C. J., concurs in the result.