LAND, J.
 

 On December 14, 1926, the police jury of the parish of Tangipahoa created within ward 7 of that parish Gravity drainage district No. 2.
 

 On September 20, 1927, an election of the property taxpayers was held in said district on the question of incurring debt and issuing bonds in the amount of $240,000. These bonds were to run for a period not exceeding thirty years, beginning with the year 1928, and were to bear interest not larger than 6 per
 
 cent
 
 per annum, payable semiannually out of an ad valorem tax on all the property in said district. The funds thus derived were to be used in “constructing, cleaning and maintaining canals for gravity drainage of said district.”
 

 The proposition to incur debt and issue the bonds was carried by a majority in number of votes and by a majority in property-values, and the result was duly promulgated September 21, 1927.
 

 On August 12,1929, a resolution was passed authorizing the issuance and sale of the bonds, numbered from 1 to 240, of the denomination of $1,000 each, dated January 1,1930, and bearing interest at the rate of 5 per cent, per annum from date "until paid, interest payable semiannually on the 1st day of January and of July each year.
 

 As a satisfactory bid was not received for the bonds, the board of commissioners of Gravity drainage district No. 2, on February 6, 1930, again authorized the bonds' to be advertised for sale at the rate of 5% per cent, per annum interest, and the bid of defendant, Oaldwell & Co., was accepted by the board.
 

 Defendant refused to comply with its bid, after amicable demand. The present suit was then brought, on April 15, 1930, against defendant by Gravity drainage district No. 2 to compel compliance with the bid, and from a judgment in favor of the board, defendant has appealed.
 

 The special election was held and the bonds were issued under the provisions of article 14, § 14 of the Constitution of 1921, and of Act No. 46 of 1921 (Ex. Sess.), as amended by Act No. 238 of 1924, enacted to carry out the provisions of section 14(a), (d) and (f), art. 14, Const. 1921.
 

 
 *61
 
 Defendant, in its answer, attacks the bonds as void on the grounds that the board purporting to a'ct as the board of drainage commissioners of the drainage district was not in reality the valid and properly constituted governing body of said district; that the organization of the drainage district was void; that the bonds were not issued fór a purpose authorized by the Constitution; and that the proposition submitted to the voters did not definitely state the number of years for which the bonds were to run, as the election resolution, notice, and ballot stated only that the bonds were to mature “for a time not exceeding thirty years beginning with the year 1928.”
 

 In urging these objections against the validity of the bonds, defendant is clearly contesting the regularity, formality, and legality of the bond authorization for causes occurring prior to the sale of the bonds. As the prescription of 60 days, under article 14, § 14 (n), of the present Constitution has been pleaded by plaintiff board, and must prevail, this court has no authority to inquire into such matters. Roberts v. Evangeline Parish School Board, 155 La. 331, 99 So. 280; Hardin v. Police Jury of Vernon Parish, 155 La. 899, 99 So. 690; Fontenot v. Miller Gravity Drainage District, 159 La. 302, 105 So. 351; Cleaver, Vass & Co. v. Consolidated Road District A, 166 La. 711, 117 So. 783; Roy et al. v. City of Lafayette, 168 La. 1081, 123 So. 720.
 

 2. Defendant contends also that the bonds are void because two years and a half have expired since they were authorized by the voters and they have not been issued.
 

 The bond authorization was legal and valid. There is no law of this state requiring any board of commissioners to issue bonds within any particular delay after an election authorizing their issuance.
 

 Within sixty days after the promulgation of the result of the election, there arose litigation against the district. See Mount v. Board of Com’rs of Gravity Drainage Dist. No. 2 of Tangipahoa Parish, 168 La. 969, 123 So. 643. This litigation necessarily resulted in delay in issuing the bonds.
 

 As stated in the proposition voted on, the bonds were “to run for a time not exceeding thirty years.” The bonds as drawn are well within that limit. They are dated January 1, 1930, mature within 24 years, and are in accord with the proposition submitted to and approved by the voters.
 

 3. Defendant’s bid for these bonds contained a stipulation that the proceeds of the sale were to be deposited in a bank of its selection, to be withdrawn only as needed for the construction of the drainage improvement, and withdrawals to be limited in such manner as to give the deposit of the proceeds of sale an average life of one year.
 

 Defendant asserts that the board was without authority to enter into such agreement, under section 37 of Act No. 46 of 1921 (Ex. Sess.), as later amended by Act No. 13 of 1924, and, having exceeded its power in so doing, the board is not bound, and the agreement is therefore void and of no effect.
 

 Section 37 of Act No. 46 of 1921 (Ex. Sess.) reads as follows: “Section 37. Sale; Par; Application of Premium — Except as otherwise herein expressly provided, no bonds issued hereunder shall be sold for less than théir par value and accrued interest, but the bidder for the bonds in his bid may stipulate that the proceeds of the bonds shall be deposited in some bank designated or to be designated by him to act as fiscal agent for the
 
 *63
 
 fund. The depository so designated must be a bank or banks located in the State of Louisiana, which shall give security to the amount and in the manner required of fiscal agents and depositories of parishes, municipalities and public boards under the Laws of Louisiana. If any premium be received', such premium shall be applied in the payment of the principal or interest of the bonds.”
 

 Section 37 of Act No. 46 of 1921 (Ex. Sess.) was amended by
 
 Act No.
 
 13
 
 of
 
 1924
 
 to
 
 read as follows: “Section 37. Sale; Par; Application of Premium
 
 and Accrued
 
 Interest— Except as otherwise herein expressly provided, no bonds issued hereunder shall be sold for less than their par value and accrued interest,
 
 tut the hinder for the bonds
 
 in his bid may stipulate that the proceeds of the bonds shall be deposited
 
 in some
 
 han7c
 
 designated or to he designated hy Mm
 
 to act as fiscal agent for the fund. This stipulation, however, shall be limited to the deposit of the bond proceeds and shall not extend to the taxes levied and collected to meet maturing bonds and coupons.
 
 The depository so designated must he a hank or hctnks located in the State of Louisiana, which shall give security to the amount and in the manner required of fiscal agents and depositories
 
 of parishes, municipalities and public boards under the laws of Louisiana.
 
 If any premium he received, such premium, mth all accrued interest received, shall he applied to the payment of the principal or to the interest on the bonds, and shall he deposited in bank along loith the taxes levied and collected for that purpose."
 

 The bid for the bonds made by the defendant, Caldwell & Co., contains the following conditions:
 

 “This offer is for immediate acceptance and prompt delivery of bonds to us and conditioned upon their' receiving the unqualified approval of Chapman & Cutler, Chicago, Ill., as to legality of issue and sale and sufficiency of tax and taxing power to provide sufficient funds for payment of principal and interest when due. You to promptly furnish certified transcript.
 

 “A further condition of our bid is that the proceeds of the sale of the above bonds are to be deposited, according to law, in a bank or banks to be designated by us.
 
 Funds are to he withdrawn only as needed for work and material as the work progresses. All ivithdrawals to he accompanied hy engineer's estimate.
 
 * * *
 

 “A further condition of our bid and forming a part thereof * * *
 
 is that the proceeds of the sale of these bonds are to he withdrawn only as needed for work and material as the work progresses.
 

 “Also withdradvals of funds are to he made so as to give the deposit of the proceeds of the sale of the above bonds an average life of one year.
 

 “All funds remaining on deposit in a hank or hanks designated hy us, after one yean-'s average,
 
 shall be deposited in the Ponchatoula Bank & Trust Company, Ifonchatoula, La.,
 
 with our interest.”
 

 In the brief filed by defendant, Caldwell & Co., it is stated that: “The sale of the bonds is illegal because the sale carries a stipulation for a control of the deposits during an average of one year; thus making it impossible or impracticable to execute the work of construction.” Defendant’s Brief, p. 3.
 

 The contention of defendant is well founded. It might have been added also that the
 
 *65
 
 sale of the bonds is illegal because the defendant, the bidder, has failed to stipulate for the return
 
 of any premium
 
 that might have been received for the deposit of the proceeds, as is expressly required by Act No. 13 of 1924; the only obligation assumed by defendant, as bidder, being to deposit in the Ponchatoula Bank & Trust Company of Ponehatoula, La., “all funds remaining on deposit
 
 in a bank or banks designated by us, after one year's average, with our interest.”
 

 Defendant does not even bind itself to deposit the proceeds of the sale of the bonds in a state bank, as is expressly provided in Act No. 13 of 1924.
 

 The fixed public policy of the state, as clearly defined in Act No. 46 of 1921 (Ex. Sess.), as amended by Act No. 13 of 1924, is that the bidder shall have no control over the expenditure of the proceeds of the sale of the bonds, and if the deposit is to be made by the bidder, he must designate in his bid a state bank for that purpose, and must account to the public board for all accrued interest and premiums received by him on the deposit. Defendant’s bid contains conditions to the contrary, is therefore illegal, and cannot be made the basis for a valid sale of the bonds.
 

 It is ordered that the judgment appealed from be annulled and reversed, in so far as said judgment condemns the defendant, Caldwell & Co., to comply with its bid.
 

 It is now ordered that the bid of defendant be declared illegal and of no effect, and that the sale of the bonds herein made and predicated upon said bid be set aside.
 

 It is further ordered that the bonds issued herein be declared legal and valid, and that readvertisement for sale of the bonds be made in the manner directed by law.
 

 O’NIELL, C. J.,
 

 is of the opinion that the court has no authority to declare the bonds valid or to order the plaintiff to readvertiso them for sale, since the court has declared the defendant’s bid illegal.