163 So. 841

## McGUFFIE v. POLICE JURY OF CATAHOULA PARISH.

### No. 33648.

Oct. 15, 1935.

Hawthorn, Stafford & Pitts, of Alexandria, for appellant.

John Dale, Jr., Dist. Atty., of Vidalia, for appellee.

ROGERS, Justice.

Under the provisions of section 14 (g) of article 14 of the Constitution of 1921, the police jury of Catahoula parish issued refunding bonds in the principal sum of $35,000, secured by one mill of the general alimony tax. This was in March, 1922. In January, 1931, the police jury of Catahoula parish, acting under the provisions of section 14 (e) of the Constitution of 1921 and Act No. 40 of 1922, issued public improvement bonds in the principal sum of $15,000, secured by two-fifths of one mill of the general alimony tax. A large part of the principal and interest of both bond issues was in default when the holder of three-fifths of the outstanding bonds of the first issue and of all the bonds of the second issue sued the defendant police jury to budget, collect, and pay to the bondholders the proceeds of the one mill and two-fifths of a mill tax pledged to secure the payment of the bonds and the interest thereon. While the suit was pending, the plaintiff therein entered into negotiations for the refunding of the bonds held by him. As the result of the negotiations, the defendant police jury adopted Ordinance No. 2672, having for its purpose, among other things, the issue of refunding bonds in the principal sum of

$49,000, representing the principal and accumulated interest on the outstanding bonds of the issues of March, 1922, and January, 1931.

As shown on its face, the ordinance was adopted pursuant to section 14 (g) of article 14 of the · Constitution of 1921, as amended by Act No. 85 of 1934, adopted at the general election held on November 6, 1934. The ordinance provides for the issuance of the refunding bonds and for their security and payment by an unlimited special ad valorem tax, thereby releasing to the police jury, to be used for general purposes, the one mill and two-fifths of a mill of the general alimony tax pledged to secure the payment of the outstanding bonds.

The ordinance of the defendant police jury was adopted on July 1, 1935, and was first published in the Catahoula News, the official journal of the parish, on July 11, 1935. Thereafter the publication appeared each week until 6 consecutive weeks had elapsed; the last publication appearing in the issue of August 16, 1935. This suit was filed on August 19, 1935.

The suit was brought by George O. McGuffie, as a resident and taxpayer of the parish of Catahoula, to have declared Ordinance No. 2672 adopted by the defendant police jury on July 1, 1935, and all proceedings thereunder and thereafter, to be ultra vires, and therefore null, void, and of no effect.

The ground of plaintiff's attack on the ordinance is that, since the bonds sought to be refunded are secured by the pledge of a certain portion of the general alimony tax, the defendant policy jury is without any constitutional right, power, or authority to secure the payment of the principal and interest of the refunding bonds by the annual levy of a special ad valorem tax as provided by the ordinance.

Without answering to the merits, but with reservation of its right to do so, the defendant police jury pleaded the prescription of 30 days provided by section 14 (g) of article 14 of the Constitution of 1921, as amended by Act No. 85 of 1934 in bar of plaintiff's attack on the authority of the defendant to issue the bonds, on the legality thereof, and on the taxes necessary to pay the bonds and the interest thereon. The plea of prescription was sustained and plaintiff's suit dismissed by the court below, and from that judgment plaintiff has appealed.

After authorizing police juries, among other political subdivisions, to issue negotiable interest bearing refunding bonds in an amount not exceeding the amount of the bonds to be refunded and the interest thereon, section 14 (g) of article 14 of the Constitution of 1921, as amended by Act No. 85 of 1934, provides: "Such political subdivisions, through their governing authorities, * * * are authorized to and shall secure the payment of said refunding bonds, in interest and principal, by the levying of special ad valorem taxes annually in an amount sufficient to pay interest annually or semi-annually and to pay the principal falling due each year, as provided in Section 14 (a) of this Article, when the bonds to be refunded were secured in like manner."

And the plaintiff argues that, as the bonds presently outstanding are secured by

the pledge of part of the revenues produced by the general alimony tax, the proposed refunding bonds can only be secured in like manner and not by the pledge of an unlimited special tax.

However, further on in the same section and article of the Constitution of 1921, it is provided: "If the validity of any refunding bonds issued under the provisions of this paragraph is not raised within thirty (30) days from date of publication of the issuing of said bonds, the authority to issue the said bonds, the legality thereof and of the taxes necessary to pay the same shall be conclusively presumed and no court shall have authority to inquire into such matters."

And defendant contends that under its plea of prescription predicated on that constitutional provision the question of whether the proposed refunding bonds are to be secured in the same manner as the original bonds cannot be considered; that, under the terms of the constitutional provision itself, after the lapse of 30 days from date of publication of the issuing of the bonds, the authority to issue the bonds, the legality thereof, and the taxes necessary to pay the same are conclusively presumed, and the court has no authority to inquire into such matters.

Against defendant's contention, plaintiff argues that defendant is wholly without any constitutional authority to issue refunding bonds secured by unlimited special taxes to replace bonds secured only by revenues derived from the general alimony tax, and that defendant cannot eke out the authority to do so by the failure of a taxpayer to set up such lack of authority within 30 days from the day the attempt is made to exercise it.

It is admitted that this suit was filed more than 30 days after the date of publication of the issuing of the bonds under attack herein.

As pointed out in the case of Roberts v. Evangeline Parish School Board, 155 La. 331, 99 So. 280, prior to the adoption of the Constitution of 1921, a state of uncertainty existed in the jurisprudence of the state in cases where the court was called upon to enforce certain statutory provisions limiting the time within which taxpayers could judicially test the validity of a tax or the issuance of bonds dependent upon such tax. And that, in order to settle the question for all time, the Constitutional Convention that prepared and adopted the Constitution of 1921, which body alone had the power to grant or withhold jurisdiction from the courts of the state, adopted. paragraph (n) of section 14 of article 14, providing that, after 60 days from the promulgation of the result of an election, no interested person should have the right to contest the legality of the election, the bond issue provided for, or the tax authorized, for any cause; and that, if the validity of any election, special tax, or bond issue is not raised within 60 days as prescribed in the constitutional provision, "the authority to issue the bonds, the legality thereof and of the taxes necessary to pay the same shall be conclusively presumed, and no court shall have authority to inquire into such matters."

And the court sustained the plea of prescription, holding that, under the constitutional provision invoked in its support, as more than 60 days had elapsed betweeen the date of the promulgation of the election and the date on which the suit was brought, the plaintiffs were without any right to question, and the court was without any authority to inquire into, the constitutionality or legality of the special election held, of the bond issue provided or of the tax authorized.

The decision in Roberts v. Evangeline Parish School Board has been approved and followed in a number of decisions subsequently rendered by this court. Some of the decisions are as follows, viz.: Hardin v. Police Jury of Vernon Parish, 155 La. 899, 99 So. 690; Fontenot v. Miller Gravity Drainage District, 159 La. 302, 105 So. 351; Brown v. Chataignier Gravity Drainage District, 161 La. 309, 108 So. 548; Roy v. City of Lafayette, 168 La. 1081, 123 So. 720; Charles Webster Realty Co. v. Police Jury, 170 La. 562, 128 So. 516; Gravity Drainage District v. Caldwell & Co., 171 La. 58, 129 So. 668. See, also, to the same effect, Perkins v. Clancy, 176 La. 787, 146 So. 748. In several of the cases mentioned, the election proceedings taken, the bonds issued, and the taxes provided were attacked as unconstitutional. The legal questions involved in this case are similar to the legal questions involved in the cited cases.

The constitutional limitation invoked by the defendant police jury was devised in the public interest, to protect the fisc against uncertainty and to protect the bonds to be issued from attack, after a reasonable time allowed the taxpayers within which to contest the validity thereof for any cause. We see no reason why it should not be applied in proper cases, particularly in view of the decisions of this court to which we have referred, which we regard as having settled the law on the question in dispute. Hence, we think the plea of prescription herein was properly sustained.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., takes no part.