**175 So. 610**

RAWLE v. JEFFERSON AND PLAQUE-
MINES DRAINAGE DIST. (GOSS-
ERAND, Intervener).

No. 34379.

June 21, 1937.

Rehearing Denied July 8, 1937.

Frank H. Langridge, of Gretna, for appellant.

Andrew H. Thalheim, of Gretna, for appellee.

L. H. Gosserand, of New Orleans, in pro. per.

LAND, Justice.

The plaintiff, Charles Rawle, as a taxpayer, filed a petition in the lower court in which he prayed for a temporary restraining order against the defendant, Board of Commissioners of Jefferson and Plaquemines Drainage District, from issuing and refunding bonds under the resolution of the board, dated January 11, 1937, and also asked for a writ of injunction.

The restraining order was issued upon the face of the papers, and a date fixed for a hearing as to why a preliminary injunction should not issue.

L. H. Gosserand filed a petition of intervention, in which he alleged that he was a taxpayer, and joined the plaintiff in asking for an injunction.

Defendant filed a plea of prescription of 30 days under Act No. 85 of 1934 to the petition of plaintiff, Charles Rawle, and to the intervention of L. H. Gosserand. The pleas were argued and referred to the merits, and trial was then had on the merits.

Defendant admitted that plaintiff, Charles Rawle, was a taxpayer, but denied, for lack of information, that intervener, L. H. Gosserand, was interested in the outcome of the suit, or that intervener was a property owner and taxpayer and owned real estate in the Jefferson and Plaquemines Drainage District.

Intervener did not offer any evidence on the question of interest, or as to the fact that he was a property owner and taxpayer and owned real estate in the Jefferson and Plaquemines Drainage District.

The trial judge maintained the pleas of prescription, and also decided the case on the merits against plaintiff and intervener, and dismissed the suit of plaintiff and the intervention.

Both plaintiff and intervener have appealed.

1. The Jefferson and Plaquemines Drainage District in the Parishes of Jefferson and Plaquemines was organized in the year 1912, pursuant to the provisions of Act No. 317 of 1910 and, since its organization, has continued to operate under the provisions of this act.

Acting under section 14 (g) of article 14 of the Constitution of 1921, as amended, see Act No. 85 of 1934, relative to re-funding outstanding indebtedness by subdivisions of the state, and acting also under the provisions of Act No. 33 of the Acts of 1935, Fourth Extra Session, the Board of Commissioners of the Jefferson and Plaquemines Drainage District met in regular session on January 11, 1937, and adopted a resolution providing for the issuance of bonds in the sum of $329,000 to refund bonds dated February 1, 1913, in the sum of $274,000, and also to refund certificates of indebtedness in the sum of $55,000, issued in 1932 and 1933.

It is stated in this resolution that, "in the course of the operation of said district it has been found necessary to incur indebtedness *for the purpose of draining and reclaiming lands in said district by means of levees and pumps,* and said district has incurred * * * for such purpose" an outstanding indebtedness in bonds of $274,000, dated February 1, 1913, and in certificates of indebtedness the sum of $55,000. (Italics ours.)

The drainage district issued, February 1, 1913, bonds in the sum of $358,500. These bonds were paid as they matured, and have been reduced to $274,000, when there was a default as to principal and interest on August 1, 1932, due to economic depression which existed through the state and the United States. No part of the principal or interest has been paid since that date.

It is recited in this resolution that the board of commissioners of the drainage district, in refunding this indebtedness, acted pursuant to a petition filed with the board, under the provisions of Act No.

33 of the Acts of 1935, Fourth Extra Session, signed by the owners of a majority of the acreage of the lands in the district, requesting the issuance of the refunding bonds in the manner set forth in the resolution.

Plaintiff attacks the issuance of the refunding bonds in the sum of $329,000 as illegal, null, and void for the following reasons.

2. Plaintiff contends that such bonds cannot be issued by resolution but that the law requires an election of the property owners as a condition precedent to the issuance of the bonds.

As stated in the resolution of the drainage board, the refunding bonds are issued under the provisions of section 14 (g) of article 14 of the Constitution of 1921, as amended, see Act No. 85 of 1934, and also under the provisions of Act No. 33 of 1935, Fourth Extra Session.

Section 14 (a) of article 14 of the Constitution of 1921, as amended, see Act No. 51 of 1926, provides "that * * * drainage, sub-drainage (waterworks and sub-waterworks) districts, hereinafter referred to as subdivisions of the State, may incur debt and issue negotiable bonds, when authorized by a vote of a majority in number and amount, of the property tax-payers qualified to vote under the Constitution and laws of this State, who vote at an election held for that purpose after notice published or posted for thirty (30) days in such manner as the Legislature may prescribe, and the governing authorities of such subdivision shall impose and collect annually, in excess of all other

taxes, a tax sufficient to pay the interest annually or semi-annually and the principal falling due each year, on such amount as may be required for any sinking fund necessary to retire said bonds at maturity."

But defendant drainage district is not proceeding under section 14 (a) of article 14 of the Constitution of 1921, as amended, see Act No. 51 of 1926; but under section 14 (g) of the same article, as amended, see Act No. 85 of 1934, which provides that: "For the purpose of re-adjusting, *refunding,* extending or unifying *the whole or any part of its outstanding bonds and certificates of indebtedness,* any political subdivision specified in Section 14 (a) of this Article as amended, and any Parish School Board, shall have full power and authority *to issue negotiable interest bearing refunding bonds in an amount not exceeding the amount of bonds and certificates of indebtedness to be refunded,* and the interest due thereon." (Italics ours.)

In Ozenne v. Board of Com'rs, 183 La. 465, at page 472, 164 So. 247, 249, this court held, that: "Section 14 (a) art. 14, of the Constitution of 1921, as amended, see Act No. 51 and Act No. 261 of 1926, has reference only to the issuance of *original* bonds and provides that the subdivisions of the state named therein may issue bonds when authorized by a vote of a majority in number and amount of the property taxpayers." (Italics ours.)

It was also held in that case that "Section 14 (g) of the same article, as amended, see Act No. 85 of 1934, has reference

*exclusively* to the 're-adjusting, *refunding,* extending or unifying the whole or any part' of the outstanding bonds or certificates of indebtedness of the various political subdivisions of the state mentioned in section 14 (a), drainage districts being among them. * * * But it says nothing about referring the matter of refunding the bonds and certificates back to the taxpayers for authority. On the contrary, section 14 (g), as amended, specifically provides:

" 'The governing body of any such subdivision and the Parish School Boards shall have full power and authority to adopt all ordinances or resolutions necessary to carry the provisions of this paragraph into effect. No proceedings in respect to the issuance of any such refunding bonds shall be necessary, except such as are contemplated by this paragraph.' " (Italics ours.)

■ The decision in Ozenne v. Board of Com'rs, 183 La. 465, 164 So. 247, became final November 4, 1935. Act No. 33 of 1935, Fourth Extraordinary Session, was signed by the Governor September 11, 1935. At that date Act No. 85 of 1934, amending article 14, § 14 (g), of the Constitution of 1921 was in full force and effect. It is provided in Act No. 85 that: "No proceedings in respect to the issuance of any such refunding bonds shall be necessary, except such as are contemplated by this paragraph, which shall be self-operative, and no further legislation shall be required to effect the same." The only "proceedings" mentioned in this paragraph are the "ordinances or resolutions"

necessary to carry its provisions into effect. It is not necessary for a drainage board to submit the matter of refunding the bonds back to the taxpayers. Ozenne v. Board of Com'rs, 183 La. 465, 473, 164 So. 247. Nor is any petition signed by the owners of a majority of the acreage of the lands in a drainage district necessary, as provided in Act No. 33 of 1935, Fourth Extra Session, to authorize the board of commissioners to adopt any resolution to issue refunding bonds for the indebtedness of the district, bonded or otherwise, or both. The procedure established by a constitutional amendment cannot be changed merely by a subsequent act of the Legislature.

■ Whether the petition in this case contained, or did not contain, the names of a majority of the landowners in the drainage district is therefore unimportant, since defendant drainage district complied with the procedure established by Act No. 85 of 1934, the constitutional amendment, under which the board of commissioners acted in this case.

3. The contention of plaintiff that there was no authority in the board of commissioners of the drainage district, at the time of the issuance of the bonds, dated February 1, 1913, to issue these bonds, is without merit.

Defendant drainage district was organized under the provisions of Act No. 317 of 1910, and the original bonds, amounting to $358,500, dated February 1, 1913, were issued upon the petition of owners of acreage in the district, representing more than two-thirds of the acreage of

that district. See Jefferson & Plaquemines Drainage District v. Whitney-Central Trust & Savings Bank, 141 La. 843, 75 So. 743. Section 9 of Act No. 317 of 1910 requires only a simple petition of two-thirds of the landowners in the district to authorize the board of commissioners to issue bonds.

The $274,000 in bonds to be refunded in this case are the remainder of the original issue of $358,500, "bearing interest at 5 per cent. per annum, payable semi-annually, to run for a period not longer than 40 years, to the amount of $14 per acre on each and every acre of land within the district." See Jefferson & Plaquemines Drainage District v. Whitney-Central Trust & Savings Bank, 141 La. 843, 845, 846, 75 So. 743.

Paragraph 3 of article 281 of the Constitution of 1898, as amended, see Act No. 132 of 1912, and by Act No. 197 of 1910 required only a simple petition signed by "not less than a majority in acreage of the property taxpayers" as authority to the board of commissioners to issue bonds. Act No. 132 of 1912 (article 281, par. 3); Act No. 197 of 1910 (article 281, par. 4).

The authority of the Jefferson and Plaquemines Drainage District to incur debt and issue bonds on the simple petition of the landowners in the district was not even questioned in the Whitney-Central Trust & Savings Bank Case, decided May 14, 1917.

It was held in that case that, notwithstanding the issuance of the $358,500 in bonds against all the lands in the district, the board of commissioners were author-

ized to divide the district into subdistricts by resolution to that effect, upon the simple petition of two-thirds of the landowners and to incur an additional debt against the land in the subdistrict.

Section 28 of Act No. 317 of 1910, under which defendant drainage district is organized, reads as follows: "Section 28. Be it further enacted, etc., That whenever a debt has been incurred and bonds ordered to be issued and a forced contribution or acreage tax levied, as provided for in the previous section, any land owner having property situated within the limits of the area proposed *to be drained,* shall have the right *during sixty days* next following the date of the publication *of the resolution* required by the preceding section, to appeal to the courts for the purpose of testing *the validity* of such proceedings, after which time the right to resort to the courts *shall be forever barred.* The land owners in a Drainage District or Subdrainage District may by unanimous consent waive the right to resort to the courts and absolutely ratify and confirm what has been done by the Drainage Commission and thereafter be forever barred from testing or contesting the validity of the proceedings, the bonds issued or the tax levied for the payment of the principal and the interest of said bonds and the cost of maintaining the district. And all Boards are required to levy the tax in such instance, and shall not be permitted to question their authority to do so." (Italics ours.)

Section 28 of Act No. 317 of 1910 was amended by Act No. 219 of 1912, § 4, to

read as follows: "Section 28. Be it further enacted, etc., That whenever a debt has been incurred and bonds ordered to be issued and a forced contribution or acreage tax levied, as provided for in the previous sections, any land owner having property situated within the limits of the area proposed *to be drained,* shall have the right *during sixty days* next following the date of the publication of *the resolution* required by the preceding sections, to appeal to the Courts for the purpose of testing *the validity* of such proceedings, after which time the right to resort to the courts shall be *forever barred.* After which time the bonds shall be registered by the Secretary of State without charge, as provided for bonds under Section 31, Act 256, of 1910. The land owners in a drainage district or subdrainage district may by unanimous consent waive the right to resort to the Courts and absolutely ratify and confirm what has been done by the Drainage Commission and thereafter be forever barred from testing or contesting the validity of the proceedings, the bonds issued or the tax levied for the payment of the principal and the interest of said bonds and the cost of maintaining the district. And all Boards are required to levy the tax in such instance, and shall not be permitted to question their authority to do so." (Italics ours.)

The prescription of 60 days, established by Act No. 219 of 1912, § 4, amending section 28 of Act No. 317 of 1910, was in full force and effect when the $358,500 in bonds were issued by defendant district February 1, 1913.

It is rather late for a landowner in this drainage district to contest by suit, filed March 23, 1937, the validity of the proceedings in the issuance of these bonds dated February 1, 1913, a part of which have been already paid, and the remainder of $274,000 are now outstanding.

Our conclusion, therefore, is that the bonds in the sum of $358,500, dated February 1, 1913, were issued upon the authority of the required number of the landowners in the drainage district, upon petition duly signed by the respective owners, and that the $274,000 of these bonds, remaining of this issue, and now proposed to be refunded, are legal and valid, and have become incontestable, as neither the validity of the proceedings, nor of the bonds authorized to be levied, nor of the tax levied, was contested within 60 days next following the date of the resolution authorizing the issuance of the bonds.

4. Now as to the contention that there was no authority in the board of commissioners of the drainage district for the issuance of the certificates of indebtedness, proposed to be refunded in this case.

Act No. 317 of 1910, under which the Jefferson and Plaquemines Drainage District was organized, provides in section 8, as amended by Act No. 227 of 1914, § 5, as follows: "Section 8. * * * That said Drainage Board or Commissioners shall have the power, and it shall be their duty, to open all natural drains which they may deem necessary in their respective districts, and to perform all work connected therewith, which they may deem

necessary to make the opening of said natural drains effective. They shall also have power to cut and open new drains or canals, wherever deemed necessary. They shall have the further power, as hereinbefore provided, to divide their districts into subdrainage districts *and to drain the entire district* or subdrainage district *by leveeing, canaling and. pumping,* or by any means whatever they deem most advantageous to drain or reclaim the lands. In order to carry out this drainage work *the Drainage Commissioners are specially authorized to enter into contracts* for the performance of such work, *or to purchase machinery* and have the work performed under their supervision, and to perform all other acts necessary to fully drain all the lands in their said district or subdrainage district, and maintain such drainage .when established." (Italics ours.)

■ The special authority conferred upon the drainage commissioners of defendant drainage district *"to enter into contracts* for the performance of such work *or to purchase machinery,"* is, necessarily, special authority delegated to the commissioners *to incur debts;* nor is the consent of the landowners in the district by petition addressed to the commissioners made necessary in this section as a condition precedent to the incurring of such, debts, for which the "certificates of indebtedness" to the amount of $55,000 were issued in this case, as recited in the resolution adopted by the commissioners for refunding the $274,000 in bonds and these certificates.

These certificates are now outstanding, the Whitney National Bank holding $45,-000; Gulf Refining Company, $5,000; city of Gretna, $2,500; and parish of Jefferson, $2,500.

The Legislature was well aware of these outstanding certificates of indebtedness issued by the various drainage districts in the state, as shown by section 14 (g) of article 14 of the Constitution of 1921, as amended, see Act No. 85 of 1934, providing for the refunding of *the outstand-ing bonds and certificates of indebtedness* of any political subdivisions of the state specified in section 14 (a), including drainage districts.

■ Our conclusion, therefore, is that the certificates of indebtedness in question constitute authorized indebtedness in this case, and may be refunded under Act No. 85 of 1934.

5. Plaintiff also attacks the issuance of the bonds in this case upon the following grounds:

"(a) That the resolution of the Board provides that *the bonds issued on February 1, 1913, which are to be refunded, will be held in trust, uncancelled,* until all of said bonds shall have been exchanged for refunding bonds; and that there is no authority in law for such procedure.

"(b) That the action of the Drainage Board in issuing Refunding Bonds to be exchanged for $55,000.00 of Certificates of Indebtedness *has deprived the holders of the bonds dated February 1, 1913,* from getting a larger proportion of taxes allocated towards the payment of their

bonds, and which said bonds were to be secured by the revenues of said Drainage District, *which is a deprivation of the rights of the holders of the bonds dated February 1, 1913.*

"(c) That the action of the Drainage Board, in adopting said resolution of January 11, 1937, has the effect of giving *equal rights to the holders of Certificates of Indebtedness,* as was already given by law *to the holders of the bonds dated February 1, 1913,* thereby violating the Constitutions of the United States and the State of Louisiana, *on the subject of vested rights."* (Italics ours.)

Plaintiff has brought this suit solely in the capacity of a property owner and taxpayer and, as such, cannot be permitted in this case to champion the alleged vested rights of the holders of the bonds issued February 1, 1913, not one of whom is a party to this suit. Besides, it is provided in Act No. 85 of 1934 (section 14 (g) that: "If *the validity* of any refunding bonds issued under the provisions of this paragraph is not raised within thirty (30) days from date of publication of the issuing of said bonds, *the authority to issue the said bonds, the legality thereof and of the taxes necessary to pay the same shall be conclusively presumed* and no court shall *have authority* to inquire into such matters." (Italics ours.)

In Ozenne v. Board of Com'rs, 183 La. 465, 470, 164 So. 247, the drainage board proposed to issue bonds on the sole authority of Act No. 85 of 1934, under which defendant drainage board is proceeding in this case, and plea of prescription of 30 days under the act was attacked as ambiguous and uncertain in its language. In answer to this objection, this court said, 183 La. 465, at page 482, 164 So. 247, 253 in the Ozenne Case: "There is no fatal ambiguity or uncertainty about this provision of the Constitution. Its meaning is clear enough, and is that, *if the validity* of the refunding bonds *is not raised,* that is, questioned by a judicial proceeding, within thirty days from date of the publication of the resolution providing for the issuance of the refunding bonds, 'the authority to issue the said bonds, the legality thereof and of the taxes necessary to pay the same shall be conclusively presumed and no court shall have authority to enquire into such matters.' In other words, the date on which the prescription of thirty days begins to run is the day on which the resolution is published." (Italics ours.)

The resolution in the case at bar was published on January 23, 1937. Plaintiff's suit was filed on March 23, 1937, and therefore more than 30 days had elapsed since the first publication of the resolution.

In Godchaux Co. v. Estopinal, 146 La. 405, 83 So. 690, upon which plaintiff relies, that company was one of the owners of lands situated within the limits of the Terre aux Boeufs drainage district. The company assailed the validity of a *local gravity drainage assessment* by the district on lands therein situated, and sought to enjoin the sheriff and ex officio tax collector from enforcing the payment of

the local assessment, on the ground that its lands could not possibly be benefited by such assessment.

Bonds predicated on the annual levying of the assessment upon the lands of the district had been issued by the district and were outstanding. More than 60 days had elapsed since the promulgation of the proceedings evidencing their issuance, and the bonds had not been theretofore declared by a judgment of court to be invalid.

A plea to the jurisdiction of the court was filed under article 281 of the Constitution and was sustained and the suit dismissed.

But it appears in the Godchaux Company Case that, *at the time of the adoption* of the constitutional provision, the 60-day limit it provided for, within which the validity of the bonds might be contested, had *already expired* in the case of the bonds in that suit. Godchaux Company was, therefore, absolutely deprived of any right of action to contest the validity of the bonds, and it was properly held that article 281, as applicable to that suit, was violative of the Constitution of the United States, in that such provision deprived Godchaux Company of its right of action, its property, without due process of law.

But in the case at bar, plaintiff and intervener had 30 days within which to contest the validity of the bonds, from the date of the publication of the resolution, but failed to avail themselves of their right of action.

The pleas of prescription were therefore properly sustained by the trial judge.

In Roberts v. Evangeline Parish School Board, 155 La. 331, at page 337, 99 So. 280, 282, after reviewing the uncertain and vacillating jurisprudence of the Supreme Court of this state, prior to the adoption of the Constitution of 1921, the court said: "Accordingly the Constitution [article 14, § 14, paragraph (n)] declares that when 60 days have elapsed after the promulgation of a tax election—

"(1) The legality of the election, of the authority to issue the bonds, and of the taxes necessary to pay the same shall be *conclusively* presumed.

"(2) That no person shall have *any right of action* to contest the legality of said election, tax provision or bond authorization, *for any cause whatsoever;* and

"(3) That no court *shall have authority* to inquire into such matters.

"The Constitution therefore declares in plain terms that after 60 days the bonds and taxes shall be conclusively held to be valid, that no one shall have the right to question their validity, that no court shall have authority to entertain any controversy over their validity.

"And it seems to us that language could not be used to express more strongly the very patent intention of the constitutional convention, to wit, that after 60 days have elapsed without any attack upon a bond issue and tax voted by property taxpayers under color of law, any person may safely purchase such bonds and feel secure

that the taxes levied to pay them will be sustained by the courts of this state. The constitutional convention had the right to say this; it did say it, and that is the end of the matter."

The decision in Roberts v. Evangeline Parish School Board was rendered November 19, 1923.

In McGuffie v. Police Jury of Catahoula Parish, 183 La. 391, 163 So. 841, 842, decided October 15, 1935, this court, in referring to the decision in Roberts v. Evangeline Parish School Board, said in part: "And the court sustained the plea of prescription, holding that, under the constitutional provision invoked in its support, as more than 60 days had elapsed between the date of the promulgation of the election and the date on which the suit was brought, the plaintiffs were without any right to question, and the court was without any authority to inquire into, *the constitutionality or legality* of the special election held, *of the bond issue* provided *or of the tax* authorized.

"The decision in Roberts v. Evangeline Parish School Board has been approved and followed in a number of decisions subsequently rendered by this court. Some of the decisions are as follows, viz.: Hardin v. Police Jury of Vernon Parish, 155 La. 899, 99 So. 690; Fontenot v. Miller Gravity Drainage District, 159 La. 302, 105 So. 351; Brown v. Chataignier Gravity Drainage District, 161 La. 309, 108 So. 548; Roy v. City of Lafayette, 168 La. 1081, 123 So. 720; Charles Webster Realty Co. v. Police Jury, 170 La. 562, 128 So. 516; Gravity Drainage District

v. Caldwell & Co., 171 La. 58, 129 So. 668. See, also, to the same effect, Perkins v. Clancy, 176 La. 787, 146 So. 748. In several of the cases mentioned, the election proceedings taken, *the bonds issued, and the taxes provided were attacked as unconstitutional*. The legal questions involved in this case are similar to the legal questions involved in the cited cases.

"The constitutional limitation invoked by the defendant police jury was devised in the public interest, to protect the fisc against uncertainty *and to protect the bonds to be issued from attack,* after a reasonable time allowed the taxpayers within which to contest the validity thereof *for any cause.* We see no reason why it should not be applied in proper cases, *particularly in view of the decisions of this court to which we have referred, which we regard as having settled the law on the question in dispute.* Hence, we think the plea of prescription herein was properly sustained." (Italics ours.)

In McGuffie v. Police Jury of Catahoula Parish, above cited, the ground of plaintiff's attack on the ordinance providing for the issuance of the refunding bonds was that, since the bonds sought to be refunded were secured by the pledge of a certain portion of the general alimony tax, the defendant police jury was *"without any constitutional right, power, or authority"* to secure the payment of the principal and interest of the refunding bonds by the annual levy of a special ad valorem tax as provided. (Italics ours.)

The ordinance under which the bonds were to be refunded in the McGuffie Case,

as in the case at bar, was adopted pursuant to section 14 (g) of article 14 of the Constitution of 1921, as amended, see Act No. 85 of 1934, and the prescription of 30 days was pleaded and was sustained.

■ 6. It is provided in Act No. 85 of 1934, amending paragraph (g) of section 14 of article 14 of the Constitution of 1921, that: "Refunding bonds issued hereunder shall be governed by the provisions of Section 14 (h) of this Article; provided that the maturities *shall be so fixed as to effect a consequent reduction* in the annual rate of taxes or annual forced contributions required, or annual revenues pledged.

"Upon the issuance of refunding bonds, as provided herein, by any political subdivision or Parish School Board, *any holder of any outstanding bond or certificate of indebtedness* of any such political subdivision or Parish School Board, whether matured or unmatured, *may upon surrendering such bond or certificate of indebtedness* to the issuing authority, receive in exchange and substitution therefor *a refunding bond* of the same amount, bearing interest not exceeding six (6%) per centum per annum, maturing not longer than forty (40) years from date of such refunding bond." (Italics ours.)

The resolution for refunding the bonds provides that the old bonds shall be held in trust until all old bonds are turned in for exchange.

The resolution also provides for a reduction of interest from 5 per cent. to a sliding scale, beginning at 2 per cent., then increasing to 2½ per cent., and then to 4 per cent., where it remains.

It is contended by plaintiff and intervener, who have joined in their attacks upon the bond issue in this case, that these provisions in the resolution violate the provisions in Act No. 85 of 1934, above quoted.

This is clearly an attack upon the *constitutionality* of the bond issue, as Act No. 85 of 1934 is an amendment to the Constitution of 1921, the present Constitution of the state.

Such attacks are clearly barred by the prescription of 30 days, and the pleas of prescription made herein by defendant drainage district were properly sustained in the lower court.

Judgment affirmed.