PONDER, Justice.
 

 The relator, the Cottonport Bank, instituted mandamus proceedings against the respondent, the Police Jury of the Parish of Avoyelles, seeking to compel the police jury and its treasurer to deposit monthly with the relator one-tenth of all funds collected and to be collected for the retirement of a road bond issue created by the police jury in 1919 until the bonds are retired and the levy and collection of the taxes expire.
 

 The Union Bank of the Parish of Avoyelles intervened, claiming that the bonds
 
 *969
 
 issued in 1919 were absorbed, exchanged, substituted and liquidated by a refunding issue of bonds authorized by the police jury in 1935, and that it is entitled to the deposit of the tax money collected and to be collected to retire the refunding bonds by virtue of its being the fiscal agent of the police jury.
 

 Upon trial of the cause, the lower court rejected the intervenor’s claim and gave judgment ordering the police jury and its treasurer to deposit monthly in the relator bank, the Cottonport Bank, one-tenth of all the funds collected and to be collected for the retirement of the original bond issue of 1919 until the refunding bonds of 1935, which were substituted for the original issue of 1919, are retired, and the levy and collection of the tax expires. The intervenor, the Union Bank, has appealed. The matter has now been submitted for our determination.
 

 On June 19, 1919, the Police Jury of Avoyelles Parish received and accepted the bid of the Avoyelles Bank & Trust Company of Marksville, Louisiana for the purchase of $1,500,000 of bonds, being the total amount of bonds issued by the police jury under a road district created by it in 1919. Under the terms of the bid, it was agreed that the bank would pay a premium of $69,275 upon the condition that the police jury would deposit in the. Avoyelles Bank & Trust Company and other banks in Avoyelles Parish, to be designated by the Avoyelles Bank & Trust Company, the proceeds from the sale of the bonds and the special tax to be collected for the retirement of the bonds. Thereafter, on July 3, 1919, the police jury in pursuance of its agreement with the Avoyelles Bank & Trust Company adopted a resolution designating the following banks in the Parish of Avoyelles as depositories for, the $1,500,000 bond issue and the $69,275 premium in the following amounts:
 

 Cottonport Bank, Cottonport,
 

 La....................... $ 150,000.00
 

 Merchants & Planters Bank,
 

 Bunkie, La.............. 339,758.33
 

 Central Bank & Trust Co.,
 

 Mansura, La............. 339,758.33
 

 Avoyelles Bank & Trust Co.,
 

 Marksville, La........... 739,758.34
 

 Total ................. $1,569,275.00
 

 A further declaration was made to the effect that the tax for the thirty years as collected, which was designated as the sinking fund, would be deposited in the aforesaid four banks in the following proportions, to wit: Cottonport Bank, 3-45 ; Merchants & Planters Bank, 14-45; Central Bank & Trust Co., 14 — 45; Avoyelles Bank & Trust Co., 14-45.
 

 On August 6, 1919, the above resolution referring to the depositing of the tax to be collected and designated as the sinking fund for the redemption of the $1,-500,000 bond issue was amended to the following proportions:
 

 Cottonport Bank ...................1/10
 

 Merchants & Planters Bank.........3/10
 

 Central Bank & Trust Co............3/10
 

 Avoyelles Bank & Trust Co..........3/10
 

 In 1935, the police jury issued refunding bonds, under the provisions of Article XIV, Section 14(g), of the Constitution,
 
 *971
 
 as amended, in the amount of $1,042,000 in replacement and substitution of the original bonds. At the same time, a resolution was passed authorizing the levy of a tax on all the taxable property within the limits of the parish sufficient to retire the refunding bonds. The Avoyelles Bank & Trust Company was liquidated, and thereafter, the Union Bank became the fiscal agent of the parish. The Union Bank has insisted, since it became the fiscal agent, that it should receive the proceeds of the tax, and for the past several years the Cottonport Bank has not received any of the deposits of this fund.
 

 The Union Bank contends that the relator did not have a contract with the police jury for the deposit of one-tenth of the funds derived from the collection of the tax.
 

 We see no merit in this contention for the reason that it is apparent from the conditions contained in the bid with the Avoyelles Bank & Trust Company that a distribution of the bonds and funds appertaining thereto was contemplated, and the subsequent resolutions distributing the bonds and designating the proportionate share of the sinking fund to be distributed in each bank bears out this conclusion. The record shows that each bank paid a proportionate part of the premium called for in the bid. For some reason or other, possibly because the Avoyelles Bank & Trust Company- was unable to float the bond issue in its entirety, it appears that these banks grouped together in order to float the bonds with the full knowledge and consent of the police jury. The subsequent resolutions carrying out this distribution between the banks conclusively show that the police jury agreed to it. From the conditions in the bid and the subsequent resolutions relating thereto, the police jury undoubtedly knew when it accepted the bid that the bonds and the deposits relative thereto were to be handled in this manner.
 

 The intervenor contends that the refunding bonds are an entirely new set of bonds, and the tax levied for their 'payment is not the same tax referred to in the bid of the Avoyelles Bank & Trust Company of June 19, 1919 for the original road bond issue but a new tax based upon a new law. In other words, it is contended that the original bonds were extinguished by the refunding bonds, and that the levy of the táx on the old bonds had ceased when the levy of the tax to retire the refunding bonds was made. Under the resolution of the police jury authorizing the issuance of the refunding bonds, such body, acting as the governing authority of the parish, authorized the issuance of the refunding bonds under the authority of and in compliance with the terms, conditions and provisions of Article XIV, Section 14(g), of the Constitution of 1921, as amended.
 

 The pertinent part of Article XIV, Section 14(g), reads as follows:
 

 “§ 14(g). [As amended by Act 85 of 1934] For the purpose of re-adjusting, refunding, extending or unifying the whole or any part of its outstanding bonds and certificates of indebtedness, any political subdivision specified in Section 14(a) of this
 
 *973
 
 Article as amended, and any Parish School Board, shall have full power and authority to issue negotiable interest bearing refunding bonds in an amount not exceeding ‘the amount of bonds and certificates of indebtedness to be refunded, and the interest due thereon.”
 

 From a mere reading of this provision, it. is apparent that the framers of this article of the Constitution granted this authority to the police juries and other subdivisions specified in Section 14(a) of Article XIV, as amended, in order that the police juries and other political subdivisions could meet their obligations. As stated in this provision of the Constitution, its purpose is to readjust, refund, extend or unify the whole or any part of its outstanding bonds or certificates of indebtedness. Necessarily, this contemplates all attendant obligations connected therewith. Moreover, if we were to construe this provision of the Constitution otherwise, it would have the effect of extinguishing the contract between the relator and the police jury in violation of Article IV, Section 15, of the Constitution of this State and Article I, Section 10, of the Federal Constitution.
 

 The intervenor cites the cases of McGuffie v. Police Jury of Catahoula Parish, 183 La. 391, 163 So. 841, and Ozenne v. Board of Com’rs of St. Landry and St. Martin Gravity Drainage Dist. No. 1, 183 La. 465, 164 So. 247, in support of its contention that the old bonds were canceled, not renewed by the refunding bonds, and the tax levied to retire the old bonds was canceled by the tax levied to retire the refunding bonds. It is not contended that this question was at issue in these cases, but th'e intervenor relies on certain isolated statements contained in these decisions. The cases cited are only authority for the points of law decided therein.
 

 The intervenor contends that at the time the contract was entered into with the police jury and the Avoyelles Bank & Trust Company the tax or its deposit could not be made the subject and condition of any bid under the provisions of Act 183 of 1914, Section 5.
 

 Under the provisions of Act 205 of 1912, in order to effect a prompt and satisfactory sale of bonds of this nature, the police jury had authority to enter into such agreements. Act 183 of 1914, Section 5, provides that there may also be coupled with the bid for the purchase of bonds the condition that the proceeds of the sale of same may be deposited in some designated bank as the fiscal agent of the district. This act is silent with respect to the deposit of the tax levied and collected to retire the bonds. The Act of 1914 does not specifically repeal the Act of 1912. The repealing clause in the Act of 1914 provides that all laws in conflict are repealed. The provisions in the Act of 1912, authorizing police juries to agree to deposit the proceeds of the tax levied to pay the interest and principal of the bonds as a condition in order to effect a prompt and satisfactory sale of the bonds, are in no way in conflict with any of the provisions of the Act of 1914. Moreover, repeals by implication are not favored unless such intention plainly appears. Ben
 
 *975
 
 nett-Brewer Hardware Co., Inc. v. Wakeman, 160 La. 407, 107 So. 286; New Orleans v. Liberty Shop, Ltd., 162 La. 39, 110 So. 81.
 

 The intervenor contends that Section 8 of Act 205 of 1912, insofar as the provision for the deposit of any tax as a Condition in a bid for bonds, which such tax would secure, is illegal, null and void because this section of the act is broader than the title. We find in the title of the act the provision, “For the deposit of public funds, the interest and other considerations to be paid therefor.” The fund in dispute is a public fund. The title provides for the deposit of public funds. The title is indicative of the object. Article III, Section 16, of the Constitution of 1921.
 

 For the reasons assigned, the judgment appealed from is affirmed at appellant’s cost.
 

 ROGERS, J., absent.