51 So.2d 614

**BAHRY et al. v. WEST ASCENSION CONSOL. DRAINAGE DIST.**

No. 40092.

Feb. 12, 1951.

Rehearing Denied March 19, 1951.

Walter Lemann, Glynn A. Long, F. A. Blanchard and C. A. Blanchard, Donaldsonville, Wisdom & Stone, John Minor Wisdom, New Orleans, for appellants.

A. L. Talbot, Dist. Atty., Napoleonville, George R. Blum, Asst. Dist. Atty., Donaldsonville, Sigur Martin and Martin, Himel, Hinckley & Morel, New Orleans, for defendant-appellee.

McCALEB, Justice.

Proceeding under the authority of Section 14(n) of Article 14 of the Constitution, plaintiffs, six resident taxpayers of the City of Donaldsonville, are contesting the legality of an election held on May 16, 1950, by which the property owning voters of West Ascension Consolidated Drainage District empowered the Police Jury, as the governing body of the district, to construct a gravity drainage system and issue bonds in the sum of $95,000, said bonds and interest

thereon to be secured and paid from a tax to be levied on all real property subject to taxation in the district, and also to assess a maintenance tax. They seek to enjoin the Drainage District from levying the taxes on the ground [1] that their respective lands, which are located in the City of Donaldsonville, will not receive any benefit from the proposed drainage works for the reason that Donaldsonville is already adequately drained by a system operated by the municipality.

Upon joinder of issue by defendant, a trial was had which resulted in a dismissal of the suit. Hence this appeal.

The West Ascension Consolidated Drainage District was created on December 7, 1948 by the Police Jury of Ascension Parish under authority of Act No. 91 of 1948.[2] It is composed of the first, second, third and fourth wards of Ascension Parish, being all of the land in that Parish lying on the west bank of the Mississippi river. The City of Donaldsonville, which comprises the third ward, constructed a drainage system some years ago by which the overflow of water is drained, by means of culverts, into Bayou Lafourche. This system was built at great expense because the natural drain of water within Donaldsonville is to the southeast, or towards Bayou Napo-

---

1. Plaintiffs also averred that the election was conducted in violation of certain provisions of the law but no proof was offered to support this charge and it has since been abandoned.

2. Section 14 (d) of Article 14 of the Constitution provides that the Legislature may "by general law" empower the Police Juries of the respective parishes to create gravity drainage and sub-drainage districts composed of territory "either wholly within a parish, or partly within two or more parishes * * *".

leon, and away from Bayou Lafourche which is to the north. The drainage project proposed by the defendant district is sponsored by the State Department of Public Works under a program by which the State participates in the cost of the drainage to the extent of 40%, the balance being furnished by the drainage district. The plans for the project were prepared and approved by the Chief Engineer of the Department of Public Works and provide for gravity drainage from northwest to southeast, which is the natural fall of the land. Specifically, the Chief Engineer of the Department of Public Works testified that the project contemplates the opening and clearing of all main channels and canals from the southern portion of the City of Donaldsonville toward Bayou Napoleon and that the flow of water finally will be discharged into Bayou Chevreuil; that, although it is not proposed to connect the drainage canals to the system now used in Donaldsonville (he stated that the Department of Public Works will not spend any funds within the borders of a municipality), the City of Donaldsonville and the properties therein will be directly benefited because of the natural flow of water toward the southeast of the city where the drainage canals provided for under the project will be located.

Plaintiffs strenuously challenge the opinion of the Chief Engineer of the Department of Public Works, maintaining that it is impossible for the proposed drainage to help them when the culverts of the City are draining the water from their property in the opposite direction or into Bayou Lafourche. Then, too, it is said that, since, admittedly, the proposed project will not touch the city limits of Donaldsonville, no benefit can be obtained from the system. In support of their position, plaintiffs produced an engineer who voiced a conformable view and also stated that the City has suitable drainage. And a former mayor of Donaldsonville avouched that the system of drainage, which was built by the city during his regime, operates most satisfactorily.

But the opinions of these witnesses, respecting the qualities of the drainage system of Donaldsonville, are weakened considerably by the testimony of several property owners residing in "Churchville" or "Froggamore", an industrial-residential section on the southeast outskirts of Donaldsonville, to the effect that there is no drainage whatever in that section of the city and that, when it rains, their properties become inundated.

 It is the established jurisprudence that the determination of the property to be included within a drainage district is a matter within the sound discretion of the Police Jury, on whom the Legislature has conferred the power of creating the district, and that the courts may not interfere with the exercise of discretion by that body in the absence of arbitrary action and plain abuse—for it is only in such cases that the action can be rightfully characterized as so oppressive as to be confiscatory and, thus,

violative of the Fourteenth Amendment of the Federal Constitution. Houck v. Little River Drainage Dist., 239 U.S. 254, 36 S.Ct. 58, 60 L.Ed. 266; Myles Salt Co. v. Board of Commissioners, 239 U.S. 478, 36 S.Ct. 204, 60 L.Ed. 392 and Miller & Lux v. Sacramento & San Joaquin Drainage District, 256 U.S. 129, 41 S.Ct. 404, 65 L.Ed. 859. And the test to be applied in resolving the question of alleged arbitrary action is whether the public work will be of direct or indirect benefit to the land. Determination of this is obviously an issue of fact. Mount v. Board of Com'rs, 168 La. 969, 123 So. 643. Since it is conceded in this case that the natural flow of water is to the southeast, or towards Bayou Napoleon into which the canals proposed by the district will drain, it is logical to conclude, in conformity with the views of the Chief Engineer of the Department of Public Works, that the project will be of direct aid in carrying off rainfall from city property, even though the city officials fail to provide canals or ditches connecting the city property with the lateral canals of the project. The benefit will, of course, be greater to those properties nearer the canals but some benefit, however slight, will be derived by all of the property. This suffices as it is not the function of the judiciary to measure the benefit; our role is to determine whether the inclusion of the land is confiscatory.

A consideration of all of the facts and circumstances of the case convinces us that there was no abuse on the part of the Police Jury and that it exercised a sound discretion in including plaintiffs' lands in the district.

Plaintiffs, at the trial below, made a belated attack on Act No. 91 of 1948, the theory being that it is a special law and, as such, invalid because notice of intention to apply for its passage was not given as prescribed by Section 6 of Article 4 of the Constitution. There is no merit whatever in this proposition for the simple reason that Act No. 91 of 1948 is not a special law, see State ex rel. Grosch v. City of New Orleans, 211 La. 241, 29 So.2d 778, and cases there cited and could not be considered as such in view of Section 14(d) of Article 14 of the Constitution empowering the Legislature to authorize "by general law" the creation of gravity drainage districts.

The judgment is affirmed.

HAWTHORNE, J., takes no part.