**73 So.2d 471**

**HIRT**

**v.**

**CITY OF NEW ORLEANS et al.**
(two cases).

Nos. 41640, 41642.

April 26, 1954.

Rehearing Denied May 31, 1954.

Henry B. Curtis, City Atty., Alvin J. Liska, Asst. City Atty., Robert R. Rainold, Cicero C. Sessions, Paul O. H. Pigman, Blake West, George Pigman, New Orleans, for defendants, interveners and appellants.

Rittenberg, Weinstein & Bronfin (Robert Weinstein, Philip D. Rittenberg, Fred Bronfin, Hilary J. Gaudin, Albert Mintz), Nathan Greenberg, Henry F. Yoder, New Orleans, for plaintiff-appellee.

McCALEB, Justice.

On April 16, 1953, the Commission Council of the City of New Orleans enacted Ordinance No. 18,531 creating a committee to investigate the Police Department

of the city and to report its findings and recommendations. It was provided that this committee, which was designated as the "Special Citizens Investigating Committee", was to be composed of three citizens selected by the Mayor from nominations submitted by the Board of Directors of certain civic groups; that it be authorized to appoint counsel, assistants, investigators, accountants and such other employees or agents as it deemed necessary to carry out the object and purpose of the ordinance; that it be empowered to administer oaths, take depositions, summon and examine witnesses and issue subpoenas to compel the production of books, papers or other records, either of a public or private nature, and that it make interim reports to the Orleans Parish Grand Jury as well as the Commission Council.

Section 8 of the ordinance declared that the term of the members of the committee would end on the first Monday in May, 1954, unless it had completed its investigation and rendered its final report thereon at an earlier date.

Thereafter, on April 24, 1953, the Commission Council approved of the appointment by the Mayor of three persons, Messrs. Leon D. Hubert, Jr.,[1] George C. Stohlman and Dudley C. Foley, Jr., as members of the Committee and, by resolution, appropriated $50,000 for the use of the Committee in the performance of its duties.

On September 18, 1953, the Council, by amendatory Ordinance No. 18,610, empowered the Committee to conduct private or public hearings or other proceedings necessary for the achievement of the purpose of its creation. And, on the same day by resolution, it appropriated an additional $15,000 for the Committee's use.

Acting under authority of this amendatory ordinance, the Committee conducted a public hearing on November 23, 1953. On the following day, plaintiff herein, a taxpayer of the city of New Orleans, brought the first of these consolidated suits against the city, the mayor, members of the Commission Council and members of the Special Citizens Investigating Committee, in which he sought an injunction to prohibit them from appropriating and expending any funds under the ordinances creating the Committee and from exercising any functions whatsoever pursuant thereto. The basis for the requested relief was that the ordinances were unconstitutional for various reasons and, further, that the delegation of powers to the Committee by the Commission Council was ultra vires.

On the showing made in the petition and conformable with its prayer, the judge of Division "E" of the Civil District Court issued a temporary restraining order and also a rule nisi for the defendants to show cause why the relief sought should not be granted. After a hearing on the appointed day before Division "B" of the Civil Dis-

1. He subsequently resigned and was replaced by Mr. Philip Gensler.

594

trict Court, to which the case was transferred, the judge, on December 2, 1953, granted a preliminary injunction, being of the opinion that the ordinance creating the Committee was unconstitutional and also that the Commission Council had acted unlawfully in delegating its investigatory powers to another body.

Meanwhile, on November 27, 1953, a second suit for an injunction had been instituted by plaintiff. In that matter, he challenged the Commission Council's right to hold open hearings under Section 5 of the City Charter, Act No. 159 of 1912, as amended by Act No. 338 of 1936, and, asserting that that section was unconstitutional for divers and sundry reasons, prayed that the Council and its members be prohibited from appropriating and expending any funds and from exercising any functions pursuant to it in connection with the proposed pending investigation and hearings relative to the Police Department.

This case was allotted to the judge of Division "E" of the Civil District Court who deduced, after a hearing on a rule nisi, that Section 5 of the City Charter was unconstitutional and issued the preliminary injunction prayed for by plaintiff. This judgment was entered on December 1, 1953, after the intervention of the members of the Special Citizens Investigating Committee in the proceedings.

On December 4, 1953, certain members of the Commission Council conferred with the two judges in chambers in an endeavor to obtain a modification of the writs of preliminary injunction issued in the respective cases so as to permt the Commission Council to obtain the benefit of the labors performed by the Special Citizens Investigating Committee and the data which it had assembled since it began its work, together with any recommendations which that body might see fit to make to the Council. After considering this request, the judges, acting in concert, amended their orders in the particulars solicited, authorizing the Investigating Committee to employ such administrative, executive and clerical personnel to accomplish the work of preparing the necessary data and recommendations for the Commission Council and to defray the costs out of the unexpended funds which had been theretofore appropriated by the Council.

Thereafter, all of the interested parties defendant applied to the district judges for suspensive appeals in the cases and, upon the refusal of appropriate orders, they invoked our supervisory jurisdiction, praying for writs of certiorari, prohibition and mandamus. In the case involving the validity of the city ordinance creating the Special Citizens Investigating Committee, writs were refused because the defendants had an adequate remedy by a devolutive appeal. However, in the case in which the judge of Division "E" had declared Section 5 of the City Charter unconstitutional, we granted a suspensive appeal because LSA–R.S. 13:-4431, formerly Section 1 of Act 15 of the Second Extra Session of 1934, vouch-

safed to the defendants a supersedeas as a matter of right.[2] In keeping with these orders, appeals were perfected in the two cases and they were consolidated here for purposes of argument and decision.

A perusal of the records in these cases since their submission has convinced us that the issues presented herein will no longer be in controversy when any decree which this court might render would become final. It appears from Section 8 of the ordinance, creating the Special Citizens Investigating Committee, that the term of its members shall end on the first Monday in May 1954 (May 3rd) "unless they have completed their investigation and rendered their final report thereon at an earlier date". And, as above stated, the injunctions have been modified by the judges to the extent that the Citizens Committee is free, not only to employ all assistants necessary for the purpose of its creation, but also to make whatever report it sees fit to the Commission Council.[3]

Thus, it is clear that the ordinance creating the Committee expires by its terms not

later than May 3, 1954. We also take cognizance of the fact that the present City Charter, Act No. 159 of 1912, as amended, goes out of existence on May 1, 1954 and will be supplanted by a new Home Rule Charter which was adopted by the people of New Orleans at the general election held on November 4, 1952, pursuant to the provisions of Section 22 of Article 14 of the Constitution, as amended by Act No. 551 of 1950, adopted on November 7, 1950.

Section 10–102 of Article X of the new Charter declares in part that

"All officers, departments, boards, commissions and committees * * * heretofore performing functions in The City of New Orleans are hereby abolished, except those required to be continued by provisions of the Constitution, general laws, contracts and donations, and all such shall continue to exist only for such time as may be required by any such provision."

And Section 10–103 of the same Article provides:

---

2. See Wall v. Close, 201 La. 986, 10 So.2d 779 and our per curiam in Hirt v. City of New Orleans, 74 So.2d 380, distinguishing our ruling in Guillot v. Nunez, 74 So.2d 205.

3. In this connection, it is apt to observe that, whereas plaintiff challenges the validity of the Charter provisions and the ordinances on many grounds, his justiciable interest as a taxpayer is restricted to a restraint of the illegal expenditure of public funds. Rawle v. Jefferson and Plaquemines Drainage Dist., 187 La.

891, 175 So. 610; State v. Standard Oil Co. of Louisiana, 188 La. 978, 178 So. 601 and Stewart v. Stanley, 199 La. 146, 5 So.2d 531. Hence, when the district judges modified the injunctions so as to permit the Citizens Committee to expend the sums appropriated by the Council and to make reports of its investigations to that body, plaintiff's failure to appeal from these orders constituted an acquiescence therein and, consequently, the case, for all intents and purposes, became moot so far as he was concerned.

"All ordinances, resolutions and motions of the City of New Orleans and all orders, rules and regulations made by any officer, department, board or other unit thereof, not inconsistent with this Charter, shall remain in full force and effect until altered or repealed by the proper authority, *or until they expire by their own limitation*". (Italics ours.)

Since Section 5 of the present City Charter will be superseded on May 1, 1954 by Section 3–124 of Article III of the new Charter [4] and since the ordinances challenged herein can remain in existence no longer than May 3, 1954, it is manifest that any judgment which might be rendered in these cases would be utterly ineffective—forasmuch as our next regular opinion day will not occur until April 26, 1954 and any opinion handed down on that date could not, in any event, become final in less than fifteen days from the date of its rendition or subsequent to May 3, 1954. Hence, it follows that our determination of the issues here presented would serve no useful purpose as they will be entirely moot prior to the finality of any decision in the cases.

In Pettingill v. Hills, Inc., 199 La. 557, 6 So.2d 660, 662, we observed:

"It is the function of appellate courts to render judgments that can be made effective and not to give opinions on moot questions or abstract propositions from which no practical results can follow."

See also Miller v. Molony, 157 La. 811, 103 So. 162; City of New Orleans v. Lakowsky, 158 La. 70, 103 So. 513; Edwards v. Hayes, 203 La. 433, 14 So.2d 48 and State ex rel. Jones v. Slater, 205 La. 1077, 18 So. 2d 627.

The situation presented in State ex rel. Jones v. Slater, supra, is very similar to that in the instant cases. There, it appeared that the disputed term of office of Sheriff had not expired at the time the case was submitted for our decision but that it would end before the final determination of the cause. In recalling the writs which had theretofore issued, the court cited with approval the case of Pettingill v. Hills, Inc., supra, and declared that the circumstance that the issue would become moot before the finality of any decree which could be rendered warranted a dismissal of the proceedings.

For the foregoing reasons, the appeals in each of these consolidated cases are dismissed.

---

4. It provides—"(1) The Council shall have the power to conduct investigations of: (a) The operation of any office, department or board administering the affairs of the city. (b) Any subject upon which it may legislate. (2) In conducting investigations, the Council shall have the right to administer oaths, subpoena witnesses and compel the production of books and papers pertinent thereto".