81 So.2d 835 (1955)
228 La. 131
Maurice R. PIEGTS, d/b/a Mirabeau Food Store
v.
AMALGAMATED MEAT CUTTERS AND BUTCHERS' WORKMEN OF NORTH AMERICA, LOCAL UNION NO. 437 Affiliated with the AMERICAN FEDERATION OF LABOR, Julius C. Ferina, George Baio and Natale Masl.
No. 42272.
Supreme Court of Louisiana.
May 23, 1955.
Rehearing Not Considered June 30, 1955.
*836 Anzelmo, Maxwell & Thriffiley, New Orleans, for relator.
Dodd, Hirsch & Barker, New Orleans, as amicus curiae.
Fred J. Cassibry, New Orleans, for respondents.
MOISE, Justice.
In the exercise of our supervisory jurisdiction, Article VII, § 2, LSA-Constitution of 1921, we granted writs of review a judgment of the Civil District Court for the Parish of Orleans which dissolved a temporary restraining order and refused to grant a preliminary injunction restraining the defendants from picketing plaintiff-relator's place of business, 2001 Mirabeau Avenue, New Orleans, Louisiana.
Relator, Maurice R. Piegts, doing business as Mirabeau Food Store, is engaged in the retail food business and operates a meat market in connection therewith all operations being strictly intrastate.
Relator had two meat cutters in his employ, both of whom were members of the Amalgamated Meat Cutters and Butchers Workmen of North America, Local Union No. 437, AFL of New Orleans and Vicinity, Louisiana. The union presented relator with an agreement, which he refused to sign because of the following clause:

"The employer shall recognize the union as the sole bargaining agent for all the employer's employees in the meat departments, poultry and fish which have to do with wages, hours of labor, and working conditions, excluding all supervisors as defined in the labor management relations act of 1947, as amended." (Italics ours.)
Upon relator's refusal to negotiate a union contract with the defendant union and its officers and members, his two meat cutters went on strike and commenced picketing his establishment on February 7, 1955. Relator, thereupon, employed a non-union butcher.
Relator contends that the proposed agreement, containing a provision which made the union the collective bargaining agent for all butchers, whether union or nonunion, is violative of the Right to Work Law of Louisiana, Act 252 of 1954.
Closed shops were recognized, and in 1954 the Louisiana Legislature felt that in certain industries where vacancies existed a non-union worker was not in a position to secure employment for which he was qualified. It passed the Right to Work Law, Act 252 of 1954, LSA-Revised Statutes 23:881-23:888, which provides:
"Section 1. Be it enacted by the legislature of Louisiana,
That it is hereby declared to be the public policy of Louisiana that the *837 right of a person or persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization. (Italics ours.)
"Section 2. Any express or implied agreement or understanding, or practice, between any employer and any labor union or labor organization whereby any person not a member of such union or organization shall be denied the right to work for an employer, or whereby such membership is made a condition of employment or continuation of employment by such employer, or whereby any such union or organization acquires an employment monopoly in any enterprise, is hereby declared to be an illegal combination or conspiracy and against public policy.
"Section 3. Any express or implied agreement, understanding, or practice which is designed to cause or require, or has the effect of causing or requiring any employer, whether or not a party thereto, to violate any provision of this Act is hereby declared an illegal agreement, understanding, or practice and contrary to public policy.
"Section 4. Any person, firm association, corporation, or labor union or organization engaged in lockouts, layoffs, boycotts, picketing, work stoppages, slow-downs, or other conduct, a purpose or effect of which is to cause, force, persuade or induce any other person, firm, association, corporation or labor union or organization to violate any provision of this Act shall be guilty of illegal conduct contrary to public policy as stated in this Act.
"Section 5. No person shall be required by an employer to become or remain a member of any labor union or labor organization as a condition of employment or continuation of employment by such employer.
"Section 6. No person shall be required by an employer to abstain or refrain from membership in any labor union or labor organization as a condition of employment or continuation of employment.
"Section 7. No employer shall require any person, as a condition of employment or continuation of employment, to pay any dues, fees or other charges of any kind to any labor union or labor organization.
"Section 8. Any person who may be denied employment or be deprived of continuation of his employment in violation of this Act, shall be entitled to recover in solido from any other person, firm, corporation, association, or labor organization so violating this Act, or acting in concert with such violator, by appropriate action in the courts of this state, such actual damages as he may have sustained by reason of such denial or deprivation of employment.
"Section 9. Any employer, person, firm, association, corporation, labor union or organization injured as a result of any violation or threatened violation of any provision of this Act or threatened with any such violation shall be entitled to injunctive relief in the manner provided by the injunction law of this state applicable to general civil matters, presently Louisiana Revised Statutes of 1950, Title 13, Chapter 20, Part 5, Sections 4061-4071, inclusive, against any and all violators or persons threatening violation.
"Section 10. Nothing in this Act shall be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer.
"Section 11. This Act shall apply to all contracts entered into after the effective date hereof and to any renewal or extension of any existing contract occurring thereafter.
"Section 12. [Savings Clause.]

*838 "Section 13. [Repealing Clause.]"
The United States Supreme Court upheld the constitutionality of the Right to Work Laws of two states in the cases of Lincoln Federal Labor Union No. 19129, v. Northwestern Iron and Metal Company (Whitaker v. State of North Carolina) 335 U.S. 525, 69 S.Ct. 251, 257, 93 L.Ed. 212. It stated:
"This Court beginning at least as early as 1934, when the Nebbia case was decided, has steadily rejected the due process philosophy enunciated in the Adair-Coppage line of cases. In doing so it has consciously returned closer and closer to the earlier constitutional principle that states have power to legislate against what are found to be injurious practices in their internal commercial and business affairs, so long as their laws do not run afoul of some specific federal constitutional prohibition, or of some valid federal law. See Nebbia v. New York, supra, 291 U.S. 502, at pages 523, 524, 54 S.Ct. [505] at pages 509, 510, 78 L.Ed. 940 [948, 949] 89 A.L.R. 1469, and West Coast Hotel Co. v. Parrish, supra, 300 U.S. [379] at pages 392-395, 57 S.Ct. [578] at pages 582, 583, 81 L.Ed. 703 [708-711], 108 A.L.R. 1330, and cases cited. Under this constitutional doctrine the due process clause is no longer to be so broadly construed that the Congress and state legislatures are put in a strait jacket when they attempt to suppress business and industrial conditions which they regard as offensive to the public welfare. (Italics ours.)
* * * * * *
"* * * Just as we have held that the due process clause erects no obstacle to block legislative protection of union members, we now hold that legislative protection can be afforded non-union workers." See, American Federation of Labor, v. American Sash & Door Company, 335 U.S. 538, 69 S.Ct. 258, 93 L.Ed. 222. (Italics ours.)
In the case of Local Union No. 10, United Association of Journeymen Plumbers and Steamfitters of United States and Canada of American Federation of Labor v. Graham, 345 U.S. 192, 73 S.Ct. 585, 588, 97 L.Ed. 946, the U. S. Supreme Court held that peaceful picketing could be enjoined when it interfered with a Right to Work Statute. It stated:
"* * * However innocent the picketing appeared while in progress, the Virginia courts found that it was combined with conduct and circumstances occurring before and during the picketing that demonstrated a purpose on the part of petitioners that was in conflict with the Right to Work Statute."
Relator further argues that the provision, which he objects to in the agreement, violates the public policy of the state and abridges the right of a non-union butcher. (He testified that he intends to retain his non-union butcher.)
The public policy of Louisiana is expressed in the Right to Work Act, Section 1, supra. In analyzing "the right of a person or persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization", we must look to the meaning of the word "abridged". A study of various law dictionaries and Webster's Dictionary will show that the Legislature intended the word "abridged", as used in the Act, to mean "diminished, reduced, curtailed, or shortened".
Would a non-union man's rights be diminished, reduced, curtailed, or shortened if a union acted as his agent? We answer that question in the affirmative.
There are instances where the union demands higher hourly wages and shorter hours. In order to be gainfully employed to support his family, a non-union man might be willing to make concessions. Liberty of contract is the non-union man's prerogative. A different situation is presented when he agrees to have a union *839 agency represent him. Radio Officers' Union of Commercial Telegraphers Union, A.F.L. v. National Labor Relations Board (National Labor Relations Board v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America; Gaynor News Co., Inc., v. National Labor Relations Board), 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455.
A decision in this case must be predicated on the facts set forth as contained in the four corners of the record. In our opinion, the picketing should be temporarily restrained until such time as the trial judge grants a preliminary injunction in conformity with the prayer of plaintiff's original petition. See Hughes v. Superior Court of State of California in and for County of Contra Costa, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985; Godchaux Sugars, Inc. v. Chaisson (South Coast Corporation v. Chaisson), 227 La. 146, 78 So.2d 673.
For the reasons assigned, there will be judgment making the writs absolute; the judgment, recalling the temporary restraining order, refusing a preliminary injunction, and dismissing relator's suit, is reversed and set aside. The case is now remanded to the district court for the purpose of reinstating the temporary restraining order until such time as the preliminary injunction prayed for is issued all to be conditioned as the law directs. Cost to be borne by the defendants.
HAMITER and HAWTHORNE, JJ., dissent with written reasons.
McCALEB, Justice (concurring).
I subscribe to the majority view. I am also of the opinion that, should the employer appoint the Union as his sole and exclusive bargaining agent with respect to wages, hours of labor and working conditions, it would virtually establish in favor of said Union "an employment monopoly" of the business in violation of Section 2 of Act 252 of 1954 and against the declared public policy of this State.
HAWTHORNE, Justice (dissenting).
Only two persons were employed in relator's meat department, both of whom were members of the respondent union, Amalgamated Meat Cutters and Butchers' Workmen of North America, Local Union No. 437, A. F. of L. The union of which all employees in the meat department were members presented a contract to relator containing a provision that relator was to recognize the union as sole collective bargaining agent for the employees in the meat department in matters which have to do with wages, hours of labor, and working conditions. In the proposed contract the union was seeking to become the sole bargaining agent only for the employees in the meat department and did not ask to represent anyone else employed in relator's supermarket. When the contract was presented to relator, however, he refused to bargain, stating that he would not sign any agreement with the union. The two employees in the meat department then went on strike, and picketing of relator's place of business began.
In this proceeding relator seeks to enjoin this picketing, shown to be peaceful, on the ground, among others, that the purpose of the picketing is to compel relator to enter into a contract with the union, and that this contract contains a provision which violates the Right to Work law, R.S. 23:881-23:888. The provision in the contract which allegedly violates the Right to Work law is the following:
"The Employer shall recognize the Union as the sole collective bargaining agent for all the Employer's Employees in the Meat Departments, Poultry and Fish [in all matters] which have to do with wages, hours of labor, and working conditions, excluding all supervisors as defined in the Labor Management Relations Act of 1947, as amended."
A reading of the Right to Work law, quoted in full in the majority opinion, clearly shows that its sole purpose is to prevent any person from being forced to join a *840 union or refrain from joining a union as a condition of employment. In other words, the right of any person to work "shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization". R.S. 23:881.
By the peaceful picketing in the instant case, which the majority opinion restrains, the union seeks to be recognized as the sole bargaining agent for the employees in the meat department for the purpose of collective bargaining, and nothing else. There is nothing in the contract that requires, and the union is not demanding, that anyone be forced to become a member of the union as a condition of employment. Moreover, there is nothing in the contract which denies or abridges the right to work on account of membership or non-membership in a labor union. How, then, can it be said that the provision of the proposed contract is illegal and in violation of the Right to Work law?
In effect, what the majority opinion holds in the instant case is that collective bargaining through a representative chosen by the majority of the employees to represent all the employees, union or non-union, is illegal and in violation of the Right to Work law, and that peaceful picketing for recognition of such right may be restrained or enjoined. In this case the bargaining agent chosen happens to be a labor union, but under the majority holding the result would be the same if none of the employees belonged to the union and their representative was also not a member of a union. I do not think that even the proponents of the Right to Work law will contend that it has such a far-reaching effect. Moreover, the holding of the majority is in the teeth of the provisions of R.S. 23:887, which specifically stipulates: "Nothing in this Part shall be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer."
It is my opinion that the judgment of the district court which dissolved the temporary restraining order and refused to grant a preliminary injunction restraining the defendants from peacefully picketing relator's place of business is correct and should be affirmed.
I respectfully dissent.
HAMITER, Justice (dissenting).
Generally speaking, the labor statutes and jurisprudence affecting both intrastate and interstate commerce, as I appreciate them, accord to all employees (whether union or nonunion) the right to have bargaining representatives of their choice; and such representatives may be labor organizations or labor unions. Specifically, Section 10 of the Louisiana Right to Work Law, Act 252 of 1954, invoked by relator herein provides that "Nothing in this Act shall be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer." This being true, I am unable to conclude that the disputed clause in the contract in question is violative of Section 1 of such Right to Work Law, as held by the majority, which merely provides that "* * * the right of a person or persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union or labor organization." Particularly is this so since there was no showing in the instant cause that relator's nonunion employee, who was hired subsequent to the commencement of the dispute, had or has any objection to the union's being his bargaining agent. Therefore, in my opinion, it is not correct to say that the right of the present nonunion employee of relator to work was abridged on account of his nonmembership in a labor union.
If there has been any abridgment of rights of employees in the present matter it was accomplished through the actions of relator, as approved herein by the majority. To be remembered is that when the controversial agreement was submitted and rejected all of relator's employees in the affected departments were members of the defendant union; and the contract, which purposed to give recognition to such union *841 as the bargaining agent of those employees, was tendered in accordance with their wishes and in keeping with the above quoted Section 10 of the Right to Work Law which reserved to them the right "through a * * * labor union to bargain collectively with their employer."
I respectfully dissent.

On Application for Rehearing
PER CURIAM.
In our original opinion in this case, we ordered the reinstatement of a temporary restraining order against the picketing of petitioner's place of business on the ground that the provision in the contract sought by the Union, relative to the recognition of the Union as the sole collective bargaining agent for all employees whether they belonged to the Union or not, was violative of Act 252 of 1954, LSA-R.S. 23:881-23:888, commonly known as the Right to Work Law and, therefore, the picketing, although peaceful, was for an unlawful purpose.
The opinion was handed down on May 23, 1955 and, on June 2, 1955, the respondent Union made timely application for a rehearing of the case. On June 21, 1955, while the application was pending, counsel for petitioner, in a supplemental opposition thereto, set forth that, since the filing of the application for a rehearing, the respondent Union had acquiesced in our original judgment by withdrawing and rescinding the contested contract and tendering to petitioner a new contract in which it had deleted the objectionable clause relative to the recognition of the Union as the sole bargaining agent for all of the employees in the meat department of petitioner's supermarket. Attached to the supplemental opposition was an original letter, dated June 15, 1955 addressed to petitioner and purportedly signed by the local representative of the respondent Union, in which it is specifically stated that the proposed agreement now submitted to petitioner for bargaining purposes does not contain a provision requiring him to recognize the Union as the bargaining agent for any employees other than its own members.
Counsel for respondent Union admit the existence of the new proposal by the Union, as alleged in the supplemental opposition to the application for a rehearing. However, they contend that it was not the intention of the Union, in withdrawing the objectionable exclusive recognition clause and offering a new contract, to acquiesce in our decision in this case; that the purpose of the submission of the new unobjectionable contract was to get more rapid relief for its employees and that it is still insisting that the original opinion herein is erroneous.
It appears to us from the foregoing that, whatever may be the intention of the respondent Union, its action in withdrawing and deleting the objectionable clause from the new contract that it has presented to petitioner constitutes an acquiescence in the original decree of this court. This action on its part is tantamount to a withdrawal of the application for a rehearing and places the matter in the same category as though no application was ever filed.
In view of the circumstances, the application for a rehearing will not be considered.
HAWTHORNE, Justice.
Since the Union is still insisting that the original opinion is erroneous, with which I agree, I think a rehearing should be granted.
HAMITER, J., is of the opinion that the application for a rehearing should be considered.