89 So.2d 392

MIRABEAU FOOD STORE

v.

AMALGAMATED MEAT CUTTERS AND BUTCHERS' WORKMEN OF NORTH AMERICA, LOCAL UNION NO. 437, Affiliated With The American Federation of Labor.

No. 42550.

Dec. 12, 1955.

On Rehearing June 29, 1956.

Anzelmo, Maxwell & Thriffiley, New Orleans, for relator.

Baldwin, Haspel & Molony, Lawrence A. Molony, Conrad Mayer, III, Lawrence J. Molony, New Orleans, for amicus curiæ.

Fred J. Cassibry, Ralph N. Jackson, New Orleans, with him on the brief for plaintiff-appellee.

HAMITER, Justice.

The labor dispute involved in this action, which is the last of three suits affecting the same subject matter (the second was non-suited shortly after its institution), arose because of the dissatisfaction of George P. Baio and Julius C. Ferina with respect to the working hours of their employment as meat cutters with Mirabeau Food Store, a supermarket then owned by

Maurice R. Piegts and engaged in an intrastate retail business at 2001 Mirabeau Avenue in the City of New Orleans.

Having been required to labor twelve hours a day for six days a week and additionally five hours on alternate Sundays, each of those employees appealed to the Amalgamated Meat Cutters and Butchers' Workmen of North America, Local Union No. 437, A. F. of L., of which he was a member, for assistance in obtaining better working conditions. Responding, that organization submitted to Maurice R. Piegts a proposed agreement reciting that the employer would recognize the union as the sole bargaining agent for all of his employees in the meat department (Baio and Ferina were the only ones at the time) in matters respecting wages, hours of labor, and working conditions. However, the employer refused to sign the proposed agreement or to negotiate any bargaining contract with the union, its officers and members. Whereupon, Baio and Ferina, on February 7, 1955, went out on strike and began to peacefully picket the store; and Piegts, later, employed two non-union meat cutters.

To prevent the picketing Piegts instituted suit No. 336,030 on the docket of the Civil District Court for the Parish of Orleans. A temporary restraining order initially issued therein, but on the hearing of a rule nisi it was dissolved and a preliminary writ of injunction refused.

From that ruling the plaintiff applied for and was granted writs. And on the original hearing of a rule to show cause in that case a majority of the members of this court concluded that a provision in the contract sought by the union, relative to the recognition of it as the sole bargaining agent for all employees whether union or non-union, was violative of the Louisiana Right to Work Law, being LSA–R.S. 23:881 to 23:888. Accordingly, this court reversed and set aside the district court's decree and remanded the case, directing the reinstatement of the temporary restraining order and the granting of a preliminary writ of injunction (the author of this opinion and also Justice HAWTHORNE disagreed with the conclusion and decree of the majority, they taking the position that no portion of the proposed contract was in violation of the Right to Work Law). See 228 La. 131, 81 So.2d 835.

The respondents timely filed an application for a rehearing in that proceeding, and during its pendency the union withdrew the objectionable demand for recognition as bargaining agent for non-union employees. Later, when the withdrawal was called to the attention of the court a majority of the members concluded and announced, as is evidenced by a Per Curiam, that the application for a rehearing would not be considered since the respondent union's "action in withdrawing and

deleting the objectionable clause from the new contract that it has presented to petitioner constitutes an acquiescence in the original decree of this court."

This court's original opinion and decree were rendered on May 23, 1955, and its refusal (with a Per Curiam) to consider the application for a rehearing occurred on June 30, 1955. Between those two dates, as above indicated, the union notified the plaintiff, Maurice R. Piegts, of its withdrawal of the demand to be the *sole* bargaining agent for *all* employees and re-quested · further negotiations of a contract with · the employer, submitting to him at the time a proposed new agreement which stipulated that the union would be the collective bargaining agent only for its members.

When plaintiff denied this request the respondents, on July 1, 1955, filed a motion in the district court in the first proceeding asking modification of the previously issued preliminary injunction so as to permit the union to peacefully picket his place of business for lawful purposes, particularly without seeking the objective held to be illegal by this court. After a hearing on that motion the district court modified the preliminary injunction and authorized picketing not in violation of the Right to Work Law, "particularly if such peaceful picketing is not in furtherance of a demand that the employer recognize the Union as the sole collective bargaining agent for any employees other than the Union's own members."

During the argument on such motion counsel for plaintiff had suggested that the court was without authority to modify the injunction. However, the judge rejected the suggestion, announced his conclusion, and orally accepted notice that the plaintiff would apply for writs to this court to test the ruling. The plaintiff neither applied for writs nor did he move for an appeal.

Instead, Maurice R. Piegts, on July 8, 1955, transferred the business to his two· sons (Rene Piegts and Alvin Piegts). And five days later they filed the present suit (No. 339,360 on the docket of the Civil District Court for the Parish of Orleans) to enjoin the picketing which had recommenced on the rendition and signing of the modification decree, plaintiffs urging· herein that they were strangers to the orig-· inal labor dispute.

The trial court, after a hearing, refused to issue the preliminary injunction sought. As a consequence plaintiffs applied for and obtained writs from this court.

Relators, to quote from the brief of their counsel, state that the issues in this. case are as follows:

"1. Do relators stand in the place of their predecessor, Maurice R. Piegts, and subject themselves to the labor dispute of said Maurice R. Piegts?

"2. Do former employees who went out on strike for an unlawful purpose and who have obtained equivalent employment have the right to picket former employer demanding to be reinstated to the prejudice of non-union employees' right to work as set out in Louisiana Revised Statutes 23:-881?

"3. Would relators discharging their non-union employees in order to comply with defendants' demands to be reinstated deny or abridge any right of the non-union employees to work as prohibited by Revised Statutes 23:-881–23:888?"

■ The introduced testimony and exhibits amply support the finding of the trial judge that the "plaintiff, under both ownerships, the father and sons, has peremptorily and steadfastly refused to bargain with the employees regarding their long hours and working conditions", notwithstanding that the latter all the while have indicated their willingness to settle the differences by negotiations. In fact, the record establishes that not only did the plaintiffs (father and sons) arbitrarily refuse to negotiate and bargain with the union, but that the father also took steps to discipline the employees (made them work longer hours) because of the union affiliation and activity of the latter—steps that are clearly in violation of the spirit, if not of the letter, of LSA–R.S. 23:884, subd. B, which states: "No person shall be required by an employer to abstain or refrain from membership in any labor union or labor organization as a condition of employment or continuation of employment." And it appears that the original strike and picketing were primarily provoked by such practices of Maurice R. Piegts.

True, when the employees went on strike and commenced to picket they coupled with their legal claim (for recognition, collective bargaining, and improved labor conditions) a demand which this court initially declared illegal—that the union be the sole bargaining agent. But such demand was withdrawn, prior to its reconsideration on an application for a rehearing, and before the finality of the first action; and, as a result of the withdrawal and as aforestated, the district court modified the injunction to allow a continuation of the peaceful picketing for the lawful objectives.

On the resumption of the lawful picketing (to compel negotiations and better working conditions) Maurice R. Piegts, instead of attempting to have the modification judgment reviewed by this court or to negotiate a contract with the respondents, transferred the business to his sons who brought the present action and contend herein that they are new owners and are in

no way connected with the past labor difficulties or former employees of the store— the latter being utter strangers to them. When this contention was made in the district court the judge commented from the Bench: " * * * The fact that there has been a change of ownership is of no moment; otherwise, you could go on at length every time a labor controversy arose that the employer could sell his business; he could start anew. It would be endless, and I'm sure you will find the jurisprudence, even in labor cases, is that when you buy a man's business you take it for better or for worse. * * *"

And in his written reasons for judgment the trial judge stated: "The former owner is the father of the new owners, his two sons, to whom he transferred his business. The sons are operating it with their father's assistance. It is not necessary to decide whether or not this transfer was bona fide. Assuming the transfer was in good faith, the new owners, who admittedly had full knowledge of the labor dispute, took the business for better or for worse, and subject to the labor dispute of their father."

■ With these pronouncements we agree, and we conclude that the judge correctly held that plaintiffs are merely the alter ego of the original plaintiff and that they stand in his shoes quoad the respondents.

Insofar as it is contended by plaintiffs that the striking employees have obtained equivalent employment elsewhere, and therefore are not entitled to reinstatement, the record simply does not bear out the assertion that they are now so employed. As found by the trial judge the evidence is to the effect that " * * * these picketing employees do not have comparable employment, but only a make-shift, temporary employment as meat cutters with another food store, to tide them over until their differences with plaintiff are settled."

■ In view of that finding, and inasmuch as this court has never finally determined that the employees' demand initially declared to be illegal has resulted in the loss of their original employer-employee relationship (when they withdrew that demand the court did not consider their application for a rehearing on this point) it must be concluded that such employees have not lost that relationship and that they are entitled to reinstatement. Particularly is this true since the strike and picketing was principally provoked by the arbitrary acts of the employer in refusing to negotiate and bargain with them and in attempting to penalize them for their union activity.

But the plaintiffs insist that to reinstate respondents would result in the discharge of the meat cutters employed during the pendency of the strike and that this would

deny to the latter their rights as non-union employees under the provisions of the Right to Work Law. In this argument the plaintiffs overlook the fact that respondents went on strike and picketed because of the employer's refusal, as above emphasized, to negotiate with them at all. This court has recognized the public policy of this state to be that employees may take any legal steps, including picketing, in aid of their rights to negotiation, collective bargaining and representation. In Douglas Public Service Corporation v. Gaspard, 225 La. 972, 74 So.2d 182, 186, it was declared: "The right of a laborer to his hire and to organize for the promotion of better wages and working conditions is, in our opinion, as absolute and essential to the pursuit of happiness as is his right to freedom of speech, religion, and to life and liberty itself,—all recognized under our basic law as being among those inalienable rights with which all men are endowed by their Creator. * * *

* * * * * *

" * * * we fully recognize that the laborer in his effort to secure better working conditions and wages is well within his right to organize, to bargain, and to take any and all needful steps to lawfully accomplish this end, including picketing * * *."

In the light of these declarations, as well as of the recitation in the Right to Work Law, LSA–R.S. 23:887, that "Nothing in this Part shall be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer", it is not correct to say that the peaceful picketing by the respondent employees under the circumstances heretofore emphasized violates the mentioned provisions of the Right to Work Law merely because the employer, as is here contended, has in the meantime filled their places with men who happen not to belong to a union. As was appropriately stated by the trial judge " * * * If this contention were correct, then dissatisfied employees, who go out on a strike when their employer refuses to bargain with them, could be forever denied the right to strike and picket by the simple act of the employer replacing them with non-union men. This would, in effect, nullify the 'Right to Work' Law."

Hanson v. International Union of Operating Engineers Local No. 406, La.App., 79 So.2d 199, relied on by plaintiffs to sustain their contention, is inapposite. In that case there had never been any employer-employee relationship between the plaintiff and any of the members of the picketing union. When commencing to do business the plaintiff had hired all non-union men. The purpose of the picketing there was to coerce the hiring of union men, who had enjoyed no previous con-

nection with the employer, and the firing of the non-union employees. The reasoning and holding in that case, therefore, are inapplicable to the circumstances of the present litigation.

Plaintiffs attempt to place these respondents in the position of the picketing respondents of the Hanson case, arguing that by virtue of the fact that they are new owners of the business Baio and Ferina have never been employed by them. However, what we said earlier in this opinion concerning the relationship between plaintiffs and respondents completely refutes this argument.

For these reasons the writs heretofore issued by us are recalled and the judgment of the trial court dissolving the temporary restraining order and denying a preliminary writ of injunction is affirmed.

## On Rehearing

VIOSCA, Justice ad hoc.

A rehearing was granted to review our former decree, which affirmed the judgment of the trial court denying plaintiff a preliminary injunction to restrain the picketing of its establishment by the defendants.

The facts of this case are fully stated in our original opinion herein, and in the case of Piegts v. Amalgamated Meat Cutters and Butchers' Workmen of North America, Local Union # 437, Affiliated with the American Federation of Labor, 228 La. 131, 81 So.2d 835.

In the latter case, we held that a clause in the agreement proposed and submitted by the defendants, which the employer would not sign and for which the defendants went out on strike, was illegal and violated the Right-to-Work Act, LSA–R.S. 23:881 to 23:888, Act 252 of 1954, and, that, accordingly, the picketing was for an unlawful purpose. While an application for rehearing was pending, the Union withdrew this clause. We stated, in a Per Curiam, that the action of the defendants was equivalent to acquiescence and withdrawal of the application for rehearing. Accordingly, our original decree in the case of Piegts v. Amalgamated Meat Cutters and Butchers' Workmen of North America, Local Union No. 437, Affiliated with the American Federation of Labor, supra, became the final judgment of this Court. Counsel for defendants have asked us to reconsider our ruling in that case and have called our attention to several criticisms of our ruling which appeared in various Law Review Notes and Comments.[1] Conceding that we have a right to reconsider our ruling in spite of acquiescence in the judgment, since the matter was before

1. 27 Mississippi Law Journal 147; 16 Louisiana Law Review 187; 8 Stanford Law Review 105; Labor Law Journal (CCH) July 1955 (Vol. 6, No. 7, July 1955).

us then only on an application for a preliminary injunction, nevertheless, we cannot now reconsider our ruling because Louisiana has repealed its Right-to-Work Law[2] and the question will become moot before any decree rendered by this Court can become final. See, Hirt v. City of New Orleans, 225 La. 589, 73 So.2d 471.

In our original decision in the instant matter, we stated:

" * * * inasmuch as this court has never finally determined that the employees' demand initially declared to be illegal has resulted in the loss of their original employer-employee relationship (when they withdrew that demand the court did not consider their application for a rehearing on this point) it must be concluded that such employees have not lost that relationship and that they are entitled to reinstatement. * * *"

Counsel for plaintiff contends that since the employer had no contract of employment with Baio and Ferina, or with any union representing them, their relationship was terminable at will, unless governed by statutory requirements, citing Russell v. White Oil Corporation, 162 La. 9, 110 So. 70; United Credit Co., Inc., v. Croswell Co., Inc. (In Re Bates), 219 La. 993, 54 So.2d 425.

Counsel for plaintiff further contends that Louisiana has no Labor Relations Act or other statute similar to the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., under which reinstatement may be ordered by an Administrative Board.

This is not a suit by the employees to compel reinstatement. It is a proceeding by the employer to enjoin peaceful picketing by the employees and their union, on the ground that the picketing was for a purpose made unlawful by Louisiana's Right-to-Work Law.

When we granted the writs in this case, under our supervisory jurisdiction, to review the ruling of the trial judge, the Right-to-Work Law had not been repealed. Here again we cannot rule on the legality of the picketing under that law, because the repealing act will be effective before any decree handed down by this Court can become final, and that issue will, likewise, be moot.

For the reasons assigned, the writs heretofore issued are recalled; all costs of this Court to be borne by plaintiff and costs of the district court to await determination of the case on its merits.

HAMITER and McCALEB, JJ., concur in the decree.

2. Act 16 of 1956.